[No. D037034. Fourth Dist., Div. One. June 11, 2002.]

VICTOR J. BRAVO, Plaintiff and Appellant, v.
ISRAEL ISMAJ et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of Discussion part V.

212

## COUNSEL

Victor J. Bravo, in pro. per., for Plaintiff and Appellant.

Higgs, Fletcher & Mack and John Morris for Defendant and Respondent Cigna Dental Group.

Baker & McKenzie and George E. Fleming for Defendant and Respondent Israel Ismaj.

## OPINION

**HALLER, J.**—Victor J. Bravo filed a lawsuit against his dentist, Dr. Israel Ismaj, and his dental insurer, Cigna Dental Health (Cigna), for fraud and other related allegations. After the court granted defendants' motions for judgment on the pleadings, defendants successfully moved for an order declaring Bravo a vexatious litigant and requiring that Bravo obtain permission from the presiding judge before filing any new litigation. (See Code Civ. Proc., § 391.7.)[1] Bravo appeals this order, contending: (1) there was no pending litigation when the motion was raised; (2) he was denied his right to a hearing; and (3) there was insufficient evidence to support the determination he was a vexatious litigant.[2] For reasons we explain, we agree Bravo was entitled to an oral hearing, but find the denial of this right did not constitute prejudicial error. We reject Bravo's other contentions.

[1]Statutory references are to the Code of Civil Procedure unless otherwise specified.

[2]Bravo filed a notice of appeal only as to the order declaring him a vexatious litigant. To the extent that Bravo raises issues in this appeal relating to other determinations by the trial court, we do not address them as they are not properly before us. For the same reason, we do

## FACTUAL AND PROCEDURAL BACKGROUND[3]

Bravo's dentist, Dr. Ismaj, implanted a crown and charged Bravo $60 over Cigna's standard fee. Bravo complained to Cigna regarding this extra charge and claimed Dr. Ismaj's treatment was substandard. In response, Cigna informed Bravo that it was conducting an investigation into his concerns. Cigna transferred Bravo to another dentist, and stated it was refunding the $60 alleged overpayment as a customer courtesy.

Bravo then filed a lawsuit in propria persona against Dr. Ismaj and Cigna. Less than one month later, a federal district court declared Bravo a vexatious litigant based on his filing nine federal lawsuits pertaining to matters unrelated to this case. In those federal cases, Bravo sued 30 federal agencies and individuals, including district court and Ninth Circuit Court of Appeals judges, and alleged causes of action for conspiracy, perjury, extortion, destruction or concealment of evidence, and violation of his constitutional rights.

Cigna filed a demurrer to Bravo's complaint. Before the court ruled, Bravo filed his first amended complaint. In that pleading he explicitly acknowledged that his original complaint failed to "specify the violations that each Defendant[] committed . . . ." Bravo's first amended complaint set forth 13 causes of action, all arising from Bravo's claims that Dr. Ismaj did not use gold in the dental crown; forged Bravo's initials on the authorization form; attempted to charge Bravo for unnecessary treatment for a nonexistent oral disease; and threatened to kill Bravo or to use embarrassing information from Bravo's military records if Bravo filed a lawsuit against him. Bravo also contended Cigna did not follow through with its representation it would reimburse him for the money he overpaid for the crown and failed to take appropriate action against Dr. Ismaj for his alleged misconduct.[4] Bravo claimed that because of defendants' acts and omissions, he suffered loss of dental services and sleep. He claimed he was entitled to $50,000 in compensatory damages, $15,000 in punitive damages, and an additional $50,000 for denial of his civil rights.

---

not address any issue raised by either party concerning filings after the December 5, 2000 order declaring Bravo a vexatious litigant.

[3]Resolution of the legal issues requires we set forth a detailed chronological history of the pleadings filed in this case.

[4]The first amended complaint alleged: "[1] CC § 51.7 Freedom from violence and intimidation; [2] CC § 52 Conspiracy to deny plaintiff civil rights; [3] CC § 52.1 Denial of Civil Rights; [4] CC 3294 [subd.] (c)(1) Malice; [5] CC § 1569 Duress; [6] CC § 1570 Menace; [7] CC § 1572 Fraud[;] [8] CC § 1708.7 Stalking; [9] CC § 1709 Deceit[,] (Fraudulent Deceit)[;] [10] CC § 1711 Deceit to Defraud Public[;] [11] CC § 3294 (c)(3) Fraud[;] [12] CCP § 527.7 Conspiracy[;] [13] Bus. & Prof. [Code,] § 1680 [subds.] (a), (q) & (s) Unprofessional Conduct."

In early September 1999, Dr. Ismaj's counsel, George E. Fleming, notified Bravo that because of difficulties in conducting discovery and to insulate the attorneys and Bravo from direct contact with each other, he was requesting the court to appoint a discovery master, with costs to be shared by the litigants.

Thereafter, Bravo filed several motions against Fleming. First, Bravo filed a motion seeking sanctions for Fleming's alleged violation of his ethical duty to protect his client, Dr. Ismaj. Second, Bravo moved for sanctions, claiming Fleming was rude and uncooperative in the discovery process, and made unreasonable discovery demands to harass Bravo. Third, Bravo requested a protective order to prevent defendants from asking him questions at his deposition regarding his teaching career and military background. The court denied these motions.

On September 25, 1999, Judge Luis R. Vargas, the independent calendar judge, appointed Gene Royce as the discovery master. The court denied Bravo's request that the appointment be at no cost to the litigants.

Bravo thereafter filed a series of motions regarding the special discovery master. He again asked the trial court to waive the discovery master's costs; this was denied. Bravo petitioned the special discovery master, requesting the court appoint a "referee" at no cost to either party; this was denied. Bravo then appealed the order appointing the special discovery master to this court; the appeal was dismissed on the ground it was a nonappealable order.

Bravo then filed a series of challenges against the independent calendar judge. On January 10, 2000, the court denied Bravo's motion to disqualify Judge Vargas. On February 25, 2000, the court denied Bravo's motion for reconsideration, finding it was untimely, lacked proper verification, and lacked a sufficient showing of newly discovered facts.

Bravo then sought relief in the federal court. In March 2000, Bravo petitioned the United States Court of Appeals to compel the state trial court to issue a "Telephonic Decision to Motion for Reconsideration." Bravo also petitioned this court to "compel Judge Vargas to refrain from obstructing justice and to comply with court orders." The petition was denied.

In April 2000, Dr. Ismaj and Cigna both moved for judgment on the pleadings on the ground Bravo failed to state facts sufficient to constitute a cause of action for any of his allegations. Bravo did not oppose these motions.

In May 2000, Bravo filed a writ of mandate in this court, seeking the disqualification of Judge Vargas on the grounds he was biased against

Bravo, abused his discretion, violated Bravo's civil liberties, and obstructed justice. Bravo cited as examples Judge Vargas's alleged refusal to rule on his motion for reconsideration to disqualify him as judge in the case, and the appointment of a special discovery master instead of a referee. We denied the writ, and the California Supreme Court denied Bravo's petition for review.

In the interim, on June 23, 2000, the trial court issued a telephonic ruling granting defendants' motions for judgment on the pleadings with leave to amend.

On July 7, 2000, Bravo filed another motion for sanctions, this time naming Fleming, Dr. Ismaj, Cigna, and Cigna's attorney, Ramon Lewis. Bravo sought censure and monetary sanctions of $14,160 for alleged discovery rule violations, obstruction of justice, and perpetrating a fraud upon the court, plus $3,540 for reimbursement to Bravo for his time in preparing his various motions. Bravo claimed these individuals had presented a forged document to the court and had concealed a laboratory report showing that the crown was made of inferior materials with only a minimal amount of gold. Bravo also alleged that Dr. Ismaj defrauded Bravo because he discovered Bravo was Hispanic, thus "committing racial/ethnic discrimination."

In their opposition to the sanctions motion, defendants indicated the alleged forged document was introduced as an exhibit at Bravo's deposition, and thus could not be withdrawn but had to remain in the file throughout the litigation proceedings. Defendants denied concealing the laboratory report, and explained that in accordance with the discovery master's ruling, Dr. Ismaj submitted a copy of the laboratory report, redacted to omit the laboratory's charges to Dr. Ismaj. After Bravo became distressed and protested the redaction, defendants voluntarily submitted an unredacted copy of the report to Bravo.

Bravo also filed an ex parte application requesting a 30-day continuance of the proceedings. Defendants opposed Bravo's continuance motion, and requested the court make a finding that Bravo's conduct and allegations were "unprofessional, inappropriate, illegal, and/or actionable . . . ." Cigna additionally filed an ex parte application for an order imposing sanctions against Bravo under section 128.7, contending Bravo's motion was filed for harassment and delay.

On July 12, 2000, the trial court denied Bravo's motion for a continuance without prejudice because there was no operative complaint on file. The court took Bravo's motion for sanctions under submission and set a hearing on defendants' motion for sanctions.

On July 18, 2000, after reviewing Bravo's motion for sanctions and defendants' oppositions, the court made specific factual findings that Bravo

was given the laboratory report in a timely manner by the special discovery master, and the dental approval form with Bravo's alleged initials was merely an exhibit of undetermined relevance. The court made a specific finding that Bravo failed to demonstrate that defendants or their counsel "engaged in conduct which constitutes a denial of due process of law, conspiracy to defraud, violate discovery orders or discovery statutes or otherwise obstruct justice."

The next day, Bravo submitted his proposed second amended complaint. After reviewing the pleading and concluding it failed to correct the deficiencies in the first amended complaint, the court granted defendants' motions for judgment on the pleadings and ordered Bravo to pay Cigna's costs of $1,982.

Bravo then filed a "Notice of Pending Sanctions Against Members of Court," identifying Judge Vargas and special discovery master Gene Royce. Bravo claimed his First Amendment rights had been violated because the court and discovery master had permitted defendants and their counsel to file forged documents (the exhibit at Bravo's deposition and the laboratory report).

On September 26, 2000, Bravo filed a notice of his intention to move for a new trial on the grounds that defendants, counsel, the discovery master, and the court had committed misconduct by allowing a forged document to be filed with the court, failing to take appropriate measures after learning that Dr. Ismaj had threatened Bravo, and by making unfair motions and rulings. The motion was rejected for failure to show a hearing date; Bravo refiled the identical motion for new trial on October 5, 2000.

On October 7, 2000, Bravo wrote letters to defendants and their counsel stating that on October 16, 2000, he intended to file a new lawsuit against Dr. Ismaj, Fleming, Cigna and Lewis for conspiring to obstruct justice by submitting the alleged forged document at his deposition. Bravo stated that he would accept $3,500 in settlement of this intended lawsuit. In response, on October 16, 2000, Dr. Ismaj filed an ex parte application for a temporary restraining order (TRO) to prevent Bravo from filing any further documents against defendants, their counsel, or the discovery master for 32 days to allow defendants time to prepare a motion to declare Bravo a vexatious litigant. The court granted this request and issued the TRO that same day.

Two weeks later, defendants filed their motions to declare Bravo a vexatious litigant under section 391, subdivision (b)(1), (2), and (3), and to require that he obtain leave of the court before filing any new litigation under section 391.7. In response, Bravo filed a document entitled "Plaintiff's List of Enclosures to the Court," which included his opposition to the motion

to declare him a vexatious litigant, his protests to the temporary restraining order, and a cross-complaint against defendants for violating his constitutional rights. Bravo also filed a proposed new complaint against defendants and their attorneys, and a petition for permission to file the new complaint.

On November 17, 2000, Judge Vargas issued a telephonic order declaring Bravo a vexatious litigant under section 391, subdivision (b)(3),[5] and requiring him to obtain leave of court under section 391.7 before filing any new litigation. The order specifically stated that the court would not entertain oral argument.

On appeal, Bravo contends that a lawsuit must be pending at the time a party moves to declare a litigant vexatious, and because his suit had been dismissed by a judgment on the pleadings, litigation was terminated when defendants in this case brought their motion. Bravo also contends that he was denied his right to a hearing, and that there was insufficient evidence to support the court's order finding him a vexatious litigant. We agree Bravo was entitled to a hearing, but conclude there was no prejudice in this case from the failure to hold one. We reject his other contentions.[6]

DISCUSSION

I. *Standards of Review*

■ A court exercises its discretion in determining whether a person is a vexatious litigant. (*Taliaferro v. Hoogs* (1965) 237 Cal.App.2d 73, 75 [46 Cal.Rptr. 643].) We uphold the court's ruling if it is supported by substantial evidence. (*Ibid.*; *Devereaux v. Latham & Watkins* (1995) 32 Cal.App.4th 1571, 1588 [38 Cal.Rptr.2d 849].) On appeal, we presume the order declaring a litigant vexatious is correct and imply findings necessary to support the judgment. (*Tokerud v. CapitolBank Sacramento* (1995) 38 Cal.App.4th 775, 780 [45 Cal.Rptr.2d 345].)

Whether litigation must be pending when the motion is raised, and whether Bravo is entitled to a hearing on the motion, are questions of statutory interpretation subject to de novo review. (*Woodman Partners v. Sofa U Love* (2001) 94 Cal.App.4th 766, 770 [114 Cal.Rptr.2d 566].)

---

[5]Section 391, subdivision (b)(3) provides a person is a vexatious litigant if "while acting in propria persona, [the litigant] repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay."

[6]We note that Bravo's notice of appeal was prematurely filed. (Cal. Rules of Court, rule 2(a), (c), & (f).) The notice of appeal was filed on November 28, 2000, following the telephonic order issued on November 17, 2000, but the final order was not entered until December 5, 2000. We construe the notice of appeal to have been filed after entry of the final order. (Cal. Rules of Court, rule 2(d); *Margolin v. Shemaria* (2000) 85 Cal.App.4th 891, 893, fn. 1 [102 Cal.Rptr.2d 502].)

■ Our role as an appellate court is to determine the legislative intent to effectuate the purpose of the law. In doing so, we do not construe a statute in isolation, but review it in context of the entire statutory scheme to which it belongs, harmonizing all sections to retain its effectiveness. (*In re Christina A.* (2001) 91 Cal.App.4th 1153, 1162 [111 Cal.Rptr.2d 310], citing *Calatayud v. State of California* (1998) 18 Cal.4th 1057, 1064-1065 [77 Cal.Rptr.2d 202, 959 P.2d 360].) "If statutory language is susceptible to more than one interpretation, courts must adopt the meaning that conforms to the spirit of the statutory scheme and reject that which would result in absurd consequences unintended by the Legislature. In applying these principles, courts must keep in mind the object to be achieved, and the evil to be prevented, by the legislation." (*In re Christina A., supra,* 91 Cal.App.4th at p. 1162.)

## II. *Vexatious Litigant Statutes*[7]

■ Vexatious litigant statutes were created "to curb misuse of the court system by those acting in propria person a who repeatedly relitigate the same

---

[7]California's vexatious litigant statutes, sections 391.1-391.7, provide in part:

"§ 391.1. In any litigation pending in any court of this state, at any time until final judgment is entered, a defendant may move the court, upon notice and hearing, for an order requiring the plaintiff to furnish security. The motion must be based upon the ground, and supported by a showing, that the plaintiff is a vexatious litigant and that there is not a reasonable probability that he will prevail in the litigation against the moving defendant."

"§ 391.2. At the hearing upon such motion the court shall consider such evidence, written or oral, by witnesses or affidavit, as may be material to the ground of the motion. No determination made by the court in determining or ruling upon the motion shall be or be deemed to be a determination of any issue in the litigation or of the merits thereof."

"§ 391.3. If, after hearing the evidence upon the motion, the court determines that the plaintiff is a vexatious litigant and that there is no reasonable probability that the plaintiff will prevail in the litigation against the moving defendant, the court shall order the plaintiff to furnish, for the benefit of the moving defendant, security in such amount and within such time as the court shall fix."

"§ 391.4 When security that has been ordered furnished is not furnished as ordered, the litigation shall be dismissed as to the defendant for whose benefit it was ordered furnished."

"§ 391.6 When a motion pursuant to Section 391.1 is filed prior to trial the litigation is stayed, and the moving defendant need not plead, until 10 days after the motion shall have been denied, or if granted, until 10 days after the required security has been furnished and the moving defendant given written notice thereof. When a motion pursuant to Section 391.1 is made at any time thereafter, the litigation shall be stayed for such period after the denial of the motion or the furnishing of the required security as the court shall determine."

"§ 391.7 (a) In addition to any other relief provided in this title, the court may, on its own motion or the motion of any party, enter a prefiling order which prohibits a vexatious litigant from filing any new litigation in the courts of this state in propria persona without first obtaining leave of the presiding judge of the court where the litigation is proposed to be filed. Disobedience of such an order by a vexatious litigant may be punished as a contempt of court.

"(b) The presiding judge shall permit the filing of such litigation only if it appears that the litigation has merit and has not been filed for the purposes of harassment or delay. The presiding judge may condition the filing of the litigation upon the furnishing of security for the benefit of the defendants as provided in Section 391.3."

issues." (*In re Bittaker* (1997) 55 Cal.App.4th 1004, 1008 [64 Cal.Rptr.2d 679].) These "persistent and obsessive" litigants would often file groundless actions against judges and other court officers who made adverse decisions against them. (*First Western Development Corp. v. Superior Court* (1989) 212 Cal.App.3d 860, 867-868 [261 Cal.Rptr. 116].) "Their abuse of the system not only wastes court time and resources, but also prejudices other parties waiting their turn before the courts." (*In re Bittaker, supra,* 55 Cal.App.4th at p. 1008.)

The Legislature first enacted sections 391.1 through 391.6 in 1963, as a means of moderating a vexatious litigant's tendency to engage in meritless litigation. (*McColm v. Westwood Park Assn.* (1998) 62 Cal.App.4th 1211, 1214 [73 Cal.Rptr.2d 288]; *Wolfgram v. Wells Fargo Bank* (1997) 53 Cal.App.4th 43, 48 [61 Cal.Rptr.2d 694].) Under these sections, a defendant may stay pending litigation by moving to require a vexatious litigant to furnish security if the court determines "there is not a reasonable probability" the plaintiff will prevail. Failure to produce the ordered security results in dismissal of the litigation in favor of the defendant. (§§ 391.1, 391.4.)

In 1990, the Legislature enacted section 391.7 to provide the courts with an additional means to counter misuse of the system by vexatious litigants. Section 391.7 "operates beyond the pending case" and authorizes a court to enter a "prefiling order" that prohibits a vexatious litigant from filing any new litigation in propria persona without first obtaining permission from the presiding judge. (*McColm v. Westwood Park Assn., supra,* 62 Cal.App.4th at p. 1216.) The presiding judge may also condition the filing of the litigation upon furnishing security as provided in section 391.3. (§ 391.7, subd. (b).)

"Sections 391.1-391.6 differ from section 391.7 in some significant ways. Under the former sections, the litigant may proceed with the case without showing a reasonable probability of prevailing, but the litigant will have to furnish security to proceed if the court finds success improbable. Under the latter section, the litigant is barred from filing the action or proceeding if success is considered improbable. When the litigant is subject to a prefiling order, even if the court finds high enough probability of success to allow the litigant to proceed, it may compel the litigant to furnish security as a condition to maintaining the action. [¶] Section 391.7's extra burden upon the vexatious litigant arises because a state court has taken a second step in addressing the vexatious litigant problem and has determined that no court or adverse party should be burdened by the particular plaintiff's meritless litigation." (*McColm v. Westwood Park Assn., supra,* 62 Cal.App.4th at p. 1216, fn. 4.)

Section 391.7 does not deny the vexatious litigant access to the courts, but operates solely to preclude the initiation of meritless lawsuits and their

attendant expenditures of time and costs. (*McColm v. Westwood Park Assn., supra,* 62 Cal.App.4th at pp. 1216, fn. 3, 1217.) Vexatious litigant statutes are constitutional and do not deprive a litigant of due process of law. (*Wolfgram v. Wells Fargo Bank, supra,* 53 Cal.App.4th at pp. 59-61; *First Western Development Corp. v. Superior Court, supra,* 212 Cal.App.3d at p. 860.)

### III. *Pending Litigation*

■ Bravo contends the vexatious litigant statutes can be invoked only when litigation is actually "pending." He argues that since his lawsuit was dismissed by judgment on the pleadings, litigation had terminated before defendants filed their motion; thus, the court could not properly find he was a vexatious litigant as the required condition of "pending litigation" did not exist. We reject this contention for two reasons.

First, Bravo's factual assertion that there was no pending litigation is incorrect. Although it is true that the court had granted defendants' motions for judgment on the pleadings and had entered judgment in their favor on August 24, 2000, approximately two months before defendants filed the vexatious litigant motions, the litigation had not terminated when these motions were filed. Rather, by virtue of Bravo's new trial motion filed on October 5, 2000, the matter was active and the court had jurisdiction to act. (*Spier v. Lang* (1935) 4 Cal.2d 711, 715 [53 P.2d 138].) Because the court had not yet ruled on Bravo's new trial motion, the case was still pending when defendants filed their vexatious litigant motions.

Second, Bravo's contention is not supported by the language of section 391.7, the statutory basis for the court's order. Although section *391.1* states that a motion to require security from a vexatious litigant must be raised during "pending" litigation, defendants did not seek relief under section 391.1. Instead, defendants moved for a prefiling order under section *391.7.* Unlike Section 391.1, section 391.7 does not reference "pending" litigation.

This distinction makes sense when viewing the purposes of section 391.7. By its very nature, section 391.7's prefiling order affects a vexatious litigant's future filings. (*McColm v. Westwood Park Assn., supra,* 62 Cal.App.4th at p. 1216). The remedy is directed at precluding the initiation of a meritless lawsuit and the costs associated with defending such litigation. (*Id.* at p. 1216, fns. 3 and 4; see *Medix Ambulance Service, Inc. v. Superior Court* (2002) 97 Cal.App.4th 109, 115 [118 Cal.Rptr.2d 249].) Thus, section 391.7 affords protection to defendants named in pleadings not yet filed with the court. If individuals named as defendants in these lawsuits were required

to wait until the action was pending, the prefiling order provided for in section 391.7 would be illusory.

Here, Bravo specifically advised defendants of his intent to file another lawsuit based on essentially the same factual allegations as his dismissed suit, this time expanding the list of defendants to include counsel. Nothing in the vexatious litigant statutory scheme prevents a defendant in this circumstance from taking immediate advantage of the protection afforded by section 391.7. Requiring a prospective defendant to wait until a new lawsuit is pending would defeat the very purpose of section 391.7.

### IV. *Right to a Hearing*

Bravo next contends the trial court erred in failing to conduct a hearing on the question of whether he was a vexatious litigant for purposes of imposing a prefiling order. (§ 391.7.)

In determining entitlement to a hearing before a litigant is declared vexatious, we examine the entire statutory scheme because the statutes do not provide for a single procedural mechanism for declaring a person a vexatious litigant. Section 391, the section that identifies the four substantive definitions of a "vexatious litigant," does not set forth a procedure to declare a litigant to be vexatious. Instead, the statutes refer to a person's vexatious litigant status solely in connection with each of the statutory remedies. (§§ 391.1, 391.7.)

Sections 391.1 through 391.6, governing the imposition of a security requirement, provide that the court must first determine whether a litigant is vexatious, and if so, the court may order the litigant to post security if there is no reasonable probability the litigant will prevail. (*McColm v. Westwood Park Assn., supra,* 62 Cal.App.4th at p. 1215.) Sections 391.1 and 391.2 provide that the court must hold a hearing on the issue of the litigant's status. (See *McColm, supra,* at pp. 1215, 1218.) Section 391.2 specifically mandates the court "*shall consider such evidence, written or oral, by witnesses or affidavit,* as may be material to the ground of the motion." (Italics added.) Thus, before declaring a plaintiff vexatious and imposing security pursuant to sections 391.1 through 391.6, the court must hold a hearing, which includes the right to oral argument and to present evidence. (See *McColm, supra,* at p. 1218.)

In contrast to the procedural specificity of sections 391.1 to 391.6, section 391.7—the section relevant here—does not state the manner in which a plaintiff's status as a vexatious litigant is determined. Rather, it assumes the

declaration has already been made in a prior proceeding. As written, section 391.7 contemplates that once a litigant has been declared vexatious, the status follows the litigant to future lawsuits for purposes of requiring prefiling orders. (§ 391.7, subds. (c ) & (d).)

In many instances, this assumption is correct. For example, where a defendant involved in pending litigation contends a plaintiff is vexatious, the defendant may seek an order requiring the plaintiff to post security for the litigation to proceed. To prevail, the defendant must establish the plaintiff is vexatious and the lawsuit has no merit. (§ 391.1.) Once the plaintiff is declared vexatious, the plaintiff must post the security or the matter is dismissed. (§ 391.4.) Likewise, in the event the already declared vexatious plaintiff attempts to file another lawsuit against the defendant, the defendant may assert the prior vexatious litigant finding to obtain a prefiling order pursuant to section 391.7.

However, where a defendant involved in pending litigation learns the plaintiff is planning to file another similar lawsuit, the defendant may, as the defendants did here, avail themselves of section 391.7 in order to prevent the filing of yet another lawsuit, without also seeking a bond under section 391.1. If the plaintiff—as is true here—has never been declared vexatious in a California court, section 391.7's assumption the plaintiff has already been declared vexatious creates a procedural vacuum. Thus, we must determine the procedure to be followed under section 391.7 where a litigant has never before been declared a vexatious litigant in a court of this state.

Because section 391.7 is silent on this issue, we turn to well-settled rules of statutory construction. In doing so, we construe the code section in the context of the entire vexatious litigant scheme, with the goal of harmonizing the statute, retaining its effectiveness, and promoting the legislative objective. (*In re Christina A., supra,* 91 Cal.App.4th at p. 1162; *El Dorado Palm Springs, Ltd. v. City of Palm Springs* (2002) 96 Cal.App.4th 1153, 1160-1161 [118 Cal.Rptr.2d 15]; see also *TJX Companies, Inc. v. Superior Court* (2001) 87 Cal.App.4th 747, 750-751 [104 Cal.Rptr.2d 810].)

The primary goal of the vexatious litigant statutes is to curb misuse of the court system by individuals acting in propria persona who repeatedly relitigate the same issues or file numerous unmeritorious lawsuits. (*In re Bittaker, supra,* 55 Cal.App.4th at p. 1008.) This objective is accomplished by requiring vexatious litigants to post security to continue to pursue a pending matter or to obtain permission before filing a new lawsuit. Only vexatious litigants are subject to such burdens.

Where a defendant seeks to require a plaintiff to post security, the defendant must establish the plaintiff's status as a vexatious litigant and the

litigation's lack of merit. (§§ 391.1-391.6.) Because the imposition of this requirement limits access to the courts, the Legislature has provided that, before a plaintiff may be declared vexatious, he or she is entitled to a noticed motion, and a hearing which includes the right to oral argument and the presentation of evidence. (§§ 391.1, 391.2.)

Section 391.7's prefiling order likewise impacts a plaintiff's access to the courts. Because a plaintiff subject to a prefiling order may be required to post security even if there is no finding the matter lacks merit, this section can impose burdens even more onerous than those provided by section 391.1. Thus, if declaring a litigant vexatious under section 391.1 statutorily requires an oral hearing, so must a declaration of the same under section 391.7 for a prefiling order. To hold otherwise would render the statutory scheme internally inconsistent. There is no difference in determining the litigant's status in the section 391.1 situation (pertaining to security) and in the section 391.7 situation (pertaining to a prefiling order). In both, the court determines vexatiousness under the same statutory definitions, with the same purpose of curbing abuse of the court system. Further, the significant consequences that result from the outcome of a motion to declare a litigant vexatious support that a party is entitled to an oral hearing, regardless of whether the defendant is seeking security or a prefiling order. (See *McColm v. Westwood Park Assn., supra,* 62 Cal.App.4th at p. 1216, fn. 4; *TJX Companies, Inc. v. Superior Court, supra,* 87 Cal.App.4th at pp. 750-751.)

Where a plaintiff has already been declared vexatious and previously received the benefit of a noticed motion and oral hearing, a defendant moving under section 391.7 need not again establish the plaintiff's status. However, where, as here, the plaintiff has not been declared vexatious in a state court and the defendant moves for a prefiling order, the defendant must establish the plaintiff is vexatious in this forum. Before the court may impose this burden, the plaintiff is entitled to the same protections set forth in section 391.2: a noticed motion and a hearing which includes the right to oral argument and the presentation of evidence.

Under these principles, the trial court erred in not permitting an oral hearing before declaring Bravo vexatious and subject to a prefiling order.

We next turn to the question of whether the error requires that we remand for an oral hearing. Bravo contends failure to give him a hearing is reversible per se. We disagree.

Under our state Constitution, a party must generally prove he or she was prejudiced by an error to obtain a reversal. (Cal. Const., art. VI, § 13.) An exception to this rule applies if the defendant was denied a fair hearing.

(*Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 677 [56 Cal.Rptr.2d 803].) ██ A reversible per se standard is inapplicable here because the record establishes that Bravo had a fair hearing—Bravo had the full opportunity to file opposition to defendants' motion to declare him a vexatious litigant, including declarations, affidavits and other relevant evidence, and the record affirms the court considered Bravo's opposition papers before granting the motion. Although Bravo complains the court did not permit an oral hearing and the opportunity to present evidence at that hearing, Bravo has never suggested that he was precluded from presenting evidence when he filed his written opposition papers. Nor has he identified what evidence he would have presented had the court granted an oral hearing. Thus, the only question is whether the court should have permitted Bravo to personally argue in opposition to the motion. Under such circumstances, the court's action may be reviewed for harmless error. (See *Mediterranean Construction Co. v. State Farm Fire & Casualty Co.* (1998) 66 Cal.App.4th 257, 267 [77 Cal.Rptr.2d 781]; *M. E. Gray Co. v. Gray* (1985) 163 Cal.App.3d 1025, 1037 [210 Cal.Rptr. 285]; *Ensher, Alexander & Barsoom v. Ensher* (1964) 225 Cal.App.2d 318, 324-325 [37 Cal.Rptr. 327].)

Applying this harmless error analysis, we conclude Bravo suffered no prejudice from the denial of an oral hearing.

The court found Bravo vexatious as defined in section 391, subdivision (b)(3), based on Bravo's "numerous frivolous motions, papers and petitions to the Court of Appeal, and filings in the San Diego Superior Court on case number SB7515 . . . ." The evidence supporting this finding was overwhelming.

The record shows that Bravo filed numerous motions contesting the appointment of the special discovery master; six motions challenging Judge Vargas or his rulings; four motions against defendants or their counsel for sanctions or a protective order; a motion for a continuance to review discovery which had long been in Bravo's possession; and a motion for sanctions against both Judge Vargas and Special Discovery Master Royce for violation for Bravo's First Amendment rights. Bravo additionally filed a collection of documents entitled "Plaintiff's List of Enclosures," and a motion for a new trial.

Virtually every motion repeated a common theme—Bravo had not given permission for a gold crown and documents showing he had done so were fraudulent. Bravo admits he filed numerous motions, but did not prevail in any of them. He also concedes he filed no opposition to defendants' motions for judgment on the pleadings, a motion which tests the legal sufficiency of a pleading. Even before defendants filed the vexatious litigant motion, Judge

Vargas, the independent calendar judge, was familiar with the history and development of the case, the quantity and quality of the motions Bravo filed, and the issues raised in each request.[8]

Bravo's opposition to defendants' motion to declare him a vexatious litigant was among the documents he filed, and Judge Vargas specifically noted in his order that he had considered this opposition. Thus, Bravo's arguments against declaring him vexatious were fully before the court, and he was granted a hearing on the written pleadings. Bravo's opposition, moreover, focused solely on repeating his charges against defendants and their counsel that they had filed "petitions which are harassing and fraudulent . . . ," and committed "acts of obstruction of justice . . . conspiring to obstruct justice . . . and misinforming and misdirecting the court . . . ." Significantly, in neither his pleadings below nor on appeal has Bravo identified additional evidence he would have presented to the court. Bravo therefore fails to show how the outcome would be different if he had been allowed an oral hearing. (Cf. *M. E. Gray v. Gray, supra,* 163 Cal.App.3d at p. 1037; *Ensher, Alexander & Barsoom v. Ensher, supra,* 225 Cal.App.2d at pp. 325-326.) We are not required to remand this matter for an oral argument or an evidentiary hearing where there is no purpose shown for doing so. (See *Hurst v. Hurst* (1964) 227 Cal.App.2d 859, 868 [39 Cal.Rptr. 162, 19 A.L.R.3d 635].)

V.   *Substantial Evidence\**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

DISPOSITION

Order affirmed.

Kremer, P. J., and Huffman, J., concurred.

A petition for a rehearing was denied July 11, 2002, and appellant's petition for review by the Supreme Court was denied August 14, 2002.

---

[8]The record shows Judge Vargas presided over this case starting as early as September 13, 1999, shortly after Bravo filed his first amended complaint, through December 5, 2000, when Bravo was declared a vexatious litigant.

\*See footnote, *ante,* page 211.