Filed 12/14/21  Marriage of Patel and Bhatia CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re the Marriage of ANTHONY A. PATEL and SONYA BHATIA. | B307926 |
| ANTHONY A. PATEL, <br><br> Appellant, <br><br> v. <br><br> SONYA BHATIA, <br><br> Respondent. | Los Angeles County <br> Super. Ct. No. BD585163 |

APPEAL from orders of the Superior Court of Los Angeles County, Bruce Iwasaki, Judge. Affirmed.

Anthony A. Patel, in pro. per, for Appellant.

Boren, Osher & Luftman and Jeremy J. Osher for Respondent.

## INTRODUCTION

This appeal stems from a contentious marital dissolution case. After the parties entered into a stipulated judgment on reserved issues, the trial court declared appellant Anthony A. Patel a vexatious litigant and prohibited him from filing in propria persona any new litigation in the courts of this state without first obtaining leave of the presiding judge or justice of the court in which he proposes to file the litigation.[1] The court also imposed $5,000 in sanctions against him under Family Code section 271, payable to his ex-wife, respondent Sonya Bhatia.[2]

Patel contends the court lacked jurisdiction to enter these orders because the case had already been settled. Alternatively, he argues, he lacks the ability to pay the sanctions, and the court should not have second-guessed his abusive tactics because they worked: Bhatia agreed to settle. We affirm.

## BACKGROUND

The parties married on October 27, 2006. They have two minor children. Patel filed a petition for dissolution of marriage on July 8, 2013.

A partial stipulated judgment dissolving the marriage and disposing of certain property was entered on January 31, 2017. In September 2019, the court initially set the matter for trial on March 19, 2020.

---

[1] Patel is a former member of the California State Bar.

[2] Although respondent is designated in part of the case title as Sonya Patel, she has reassumed her unmarried name, Sonya Bhatia, and we refer to her as such. Bhatia's request for judicial notice, filed July 30, 2021, is denied.

In the first two months of 2020, however, Patel filed 10 separate ex parte applications in three courts.[3] All of them were denied. In denying one of the applications, the court noted that "Patel's papers often veered into incoherency, calling [Bhatia] a 'dummy,' describing judges in this case as 'dumb,' and discussing past and future national presidential elections." In denying another, the Supervising Judge of the Family Court concluded that the applications were "without merit and [were] being interposed for the purpose of delay and to vex" Bhatia.

On March 3, 2020, when denying one of the ex parte applications, the court issued an order to show cause (OSC) why Patel should not be sanctioned up to $2,000 under Family Code section 271; the court set the OSC for the close of trial. On March 9, 2020, when denying another application, the court issued an order to show cause why Patel should not be sanctioned up to $5,000 under Family Code section 271 and Code of Civil Procedure sections 128.5 and 128.7. The court also set an order to show cause why Patel should not be declared a vexatious litigant under Code of Civil Procedure section 391 et seq. The court set both OSCs for the close of trial.

On March 12, 2020, Patel filed a response to the court's orders.[4] The court described the filing this way: "Stating that he

---

[3] Patel has not included any of these ex parte applications in the record on appeal. He has also omitted the orders denying these applications, although one is included in the Respondent's Appendix. In addition, the record does not contain many of the other filings listed on the Register of Actions. As such, our discussion is limited to those portions of the ex parte applications that the court quoted in its minute orders of March 9, 2020, and August 3, 2020.

[4] Patel's responsive papers were not included in the appellate record.

has 'learned his lesson,' [Patel] asked the Court to reduce the sanctions contemplated to $200 for the first infraction and $500 for the 'subsequent mistake,' arguing these amounts will 'deter the repetition of the conduct.' Finally, he stated that the sanctions would impose a significant financial burden on him. With respect to the vexatious litigant issue, Petitioner stated that he had ceased further filings and conceded that he 'may have confused' matters and 'may have been wrong.' "

But a few days later, Bhatia's response "stated that Mr. Patel's contrite tone in his March 12 submission contrasted sharply with his email to her the day before, a lengthy, threatening, and insult-filled screed, which included: 'Look forward to the kids being with me when you pass away, which will be soon unless I had sole custody of them this week.' 'Sign the Papers or Just Shut the F\*\*K Up Forever.' 'I don't give an F\* if God is the judge next week instead of Lance Ito's twin brother.' 'Translation: Sign the fucking paperwork, idiot. You're too dumb for your own detriment, just like you noted that I'm too smart for my own good.' " (Capitalization and grammar original.) Bhatia also noted that Patel had filed seven civil actions against her and members of her family in state and federal court.

After several delays caused by the Covid-19 pandemic, the parties were set to begin trial on July 30, 2020, to resolve the reserved issues.[5] That day, the parties announced a settlement of all remaining financial issues in the case, including property division, attorney fees, and Patel's agreement to dismiss all pending civil actions against Bhatia and members of her family.

---

[5] Patel did not provide us with a reporter's transcript, or a suitable substitute, of the July 30, 2020 proceedings.

After further discussions, the parties also agreed to award Bhatia sole legal and physical custody of the children. No visitation order was made, and the parties agreed that the custody order was not a final judicial determination of custody. The court entered the stipulated judgment on reserved issues on July 30, 2020. That judgment did not reference the pending March 2020 orders to show cause.

On August 3, 2020, after receiving briefing and oral argument from the parties, the court declared Patel a vexatious litigant, imposed a prefiling order on him, and imposed $5,000 in sanctions under Family Code section 271. The court also determined that the "sanctions and vexatious litigant issues that had been deferred to the conclusion of trial" were not resolved by the July 2020 stipulated judgment.

Patel filed a timely notice of appeal.

## DISCUSSION

Although Patel's arguments are difficult to discern, he appears to contend: the trial court did not have the authority to deem him a vexatious litigant and impose sanctions after the parties resolved their dispute through a stipulated judgment; the court abused its discretion by declaring him a vexatious litigant and sanctioning him because his actions achieved his desired outcome; and the court abused its discretion by imposing $5,000 in sanctions because he lacks the ability to pay.

1. **The court had jurisdiction to declare Patel a vexatious litigant and impose sanctions.**

Patel contends the court exceeded its jurisdiction by declaring him a vexatious litigant, imposing a prefiling order, and sanctioning him under Family Code section 271 several days

after it entered the parties' stipulated judgment on reserved issues. We disagree.

Whether settlement of the case deprived the court of jurisdiction to enter the vexatious litigant and sanctions orders is a "question[ ] of statutory interpretation subject to de novo review. [Citation.]" (*Bravo v. Ismaj* (2002) 99 Cal.App.4th 211, 219 (*Bravo*).) "We review an award of attorney fees and costs under [Family Code] section 271 for abuse of discretion. [Citation.] … '[W]e will overturn such an order only if, considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order. [Citations.]' [Citation.] We review any factual findings made in connection with the award under the substantial evidence standard." (*In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 291.)

As a preliminary matter, and as indicated by the court in its August 3, 2020 minute order, the July 2020 stipulated judgment on reserved issues did not address the March 2019 orders to show cause regarding sanctions and vexatious litigant issues. To be sure, the judgment required each party to bear his or her own attorney fees and costs, and required Bhatia to agree not to pursue fees and costs associated with Patel's dismissal of certain enumerated cases and appeals. The judgment, however, doesn't mention sanctions under Family Code section 271, or resolution of the OSC to declare Patel a vexatious litigant. To the extent that payment of $5,000 in attorney fees as a sanction or Patel's potential vexatious litigant status were discussed at the July 30, 2020 hearing, Patel did not provide us with a transcript, or a suitable substitute, of that proceeding. (See Cal. Rules of

6

Court, rules 8.134 & 8.137.) Accordingly, based on the inadequate record before us, we cannot address the merits of Patel's claim.

In any event, and as a general matter, we disagree with Patel that the parties' settlement of their dispute deprived the court of jurisdiction to deem him a vexatious litigant or to impose sanctions against him. In *Pittman*, our colleagues in Division Seven held that the voluntary dismissal of an action did not deprive the trial court of jurisdiction to rule on a pending vexatious litigant motion. (*Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009 (*Pittman*).) And, *Pittman* explains, the rule for sanctions is the same, for the same reasons. (See *Day v. Collingwood* (2006) 144 Cal.App.4th 1116, 1125–1126 [courts retain jurisdiction to decide sanctions motions after entry of judgment].)

A "plaintiff's voluntary dismissal of an action generally deprives the court of jurisdiction in the case. [Citations.] Accordingly, most orders entered after the dismissal are void and have no effect. [Citations.] [¶] Notwithstanding this general principle, 'courts have carved out a number of exceptions to this rule in order to give meaning and effect to a former party's statutory rights.' [Citation.] When a postdismissal or postjudgment motion involves collateral statutory rights, then the court may retain jurisdiction to determine and enforce those rights. [Citations.] One frequent example of postdismissal or postjudgment retention of jurisdiction occurs when courts hear motions related to attorney fees and costs. [Citations.] Courts have likewise held jurisdiction is retained postdismissal and postjudgment to decide motions for sanctions. [Citations.]" (*Pittman, supra*, 20 Cal.App.5th at pp. 1022–1023.)

"Like a motion for attorney fees or sanctions, a motion to declare a self-represented plaintiff a vexatious litigant deals with an ancillary issue and has no bearing on the finality of the judgment or dismissal. Retaining jurisdiction to decide a vexatious litigant motion is consistent with the purpose of the statutes, which are 'designed to curb misuse of the court system by those persistent and obsessive litigants who, repeatedly litigating the same issues through groundless actions, waste the time and resources of the court system and other litigants.' [Citation.] A dismissal does not … extinguish the court's interest in deterring and punishing the waste of judicial resources. A contrary rule would allow a litigant to strategically escape a vexatious litigant finding altogether by dismissing a party or an action prior to a ruling on the vexatious litigant motion and then refiling his or her claims in a later proceeding. … To fulfill the statute's aim of protecting future potential litigants, the ability to declare an individual a vexatious litigant must survive even after the action has been dismissed. [Citation.]" (*Pittman, supra*, 20 Cal.App.5th at pp. 1024–1025.)

We agree with our colleagues' reasoning and adopt their conclusion. Here, the court's orders to show cause for attorney fees as a sanction and to declare Patel a vexatious litigant dealt with ancillary issues. Accordingly, the parties' resolution of their dispute on reserved issues through a stipulated judgment did not deprive the court of jurisdiction to subsequently sanction Patel or deem him a vexatious litigant.

2.    **The court did not abuse its discretion by declaring Patel a vexatious litigant and sanctioning him.**

As relevant here, a *vexatious litigant* is a person who: "In any litigation while acting in propria persona, repeatedly files

unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay." (Code Civ. Proc., § 391, subd. (b)(3).) Once a court has determined a person is a vexatious litigant, it may, "on its own motion or the motion of any party, enter a prefiling order which prohibits a vexatious litigant from filing any new litigation in the courts of this state in propria persona without first obtaining leave of the … presiding judge of the court where the litigation is proposed to be filed. Disobedience of the order by a vexatious litigant may be punished as a contempt of court." (*Id.*, § 391.7.) "A court exercises its discretion in determining whether a person is a vexatious litigant. [Citation.] We uphold the court's ruling if it is supported by substantial evidence. [Citations.] On appeal, we presume the order declaring a litigant vexatious is correct and imply findings necessary to support the judgment. [Citation.]" (*Bravo, supra*, 99 Cal.App.4th at p. 219.)

Family Code section 271 authorizes the court to award attorney fees as a sanction based on a party's conduct. (§ 271, subd. (a).) The court may not, however, impose an attorney fees award under section 271 "that imposes an unreasonable financial burden on the party against whom the sanction is imposed." (*Ibid.*)

Patel argues: "As the trial court (correctly) notes, the objective in family law cases is to try and reach a settlement between the parties. Here, Appellant achieved just that result in the divorce case on July 30, 2020. The trial court lacks either the basis or the ability to then second-guess how the settlement occurred over the past 7 years of this litigation." And: "Appellant even went so far as to apologize for hurting the trial court's

9

feelings as to the difficult nature of the war with China and the challenges ahead for all Americans in 2020 due to the toxic political climate. However, the trial court simply could not get over the fact that, despite all of the expletives and angry communications between Appellant and Respondent in early 2020, she (Respondent) eventually came around to Appellant's view and settled the case before trial."

In other words, Patel argues that the court's orders were an abuse of discretion because his tactics proved successful. He acknowledges that his emails and text messages to Bhatia were "[t]roubling … to read," and his "litigious" behavior included "years of prior bad conduct," but insists that "normally a family law litigant who brings about a settlement before trial would not be considered to be vexatious for the conduct which resulted in that settlement."

We are not persuaded by Patel's arguments. Although the vexatious litigant statutes and Family Code section 271 exist in part to promote settlement, they are also "designed to curb misuse of the court system by those persistent and obsessive litigants who, repeatedly litigating the same issues through groundless actions, waste the time and resources of the court system and other litigants." (*Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1169.) " 'The constant suer ... becomes a serious problem to others than the defendant he dogs. By clogging court calendars, he causes real detriment to those who have legitimate controversies to be determined and to the taxpayers who must provide the courts.' " (*In re Kinney* (2011) 201 Cal.App.4th 951, 958.)

Here, the court explained, Patel, in his filings, "rarely offered any evidence or legal analysis for his position. He sought

10

to relitigate issues and filed ex parte requests in at least four different courts on different days. Many of his papers were rants about national politics and his own sense of misdirected grievance." Indeed, by Patel's own account, he began this case in 2013 by presenting "24 affidavits and witness statements explaining to the trial court why all Americans would be best off if Appellant ran for Congress in 2014."

Although the court noted that "[i]t is difficult to capture the quantity and ferocity of Mr. Patel's intemperate and delusional court filings and communications," the examples it did provide were chilling. For example, Patel tried repeatedly and unsuccessfully to disqualify judges in this matter by insulting and threatening them. He sought to disqualify the trial judge based on his belief "that Judge Iwasaki has a very strong bias against our political system. This prejudice stems from His Honor's view that the internment of Japanese-Americans during [the] Second World War was the worst civil rights atrocity committed in the 20th Century by the U.S. Government." He accused Judge Iwasaki of "condemn[ing] the minor children in this case" to punish Patel "for supporting our political system and the three branches of government … ." In his motion, Patel included photos of the judge's wife, mother, and daughter.[6]

---

[6] Patel's attacks have not stopped. In his opening brief on appeal, he argues that the court's imposition of sanctions "revealed its mean-spiritedness and pernicious desire to infect the American people with the psychological Chinese disease of hating the past 245 years. China need not fire a nuclear weapon at Americans when trial judges are nuking the very principles that 46 presidential administrations have supported in order to make the future brighter and better for all Americans. The trial court's entire minute order … speaks volumes to the court's own hatred of its own subjects (citizens)."

Moreover, it is not at all clear that Bhatia agreed to settle this matter because of Patel's conduct rather than despite it. For example, in his request to strike Bhatia's list of property in dispute at trial—to which he had failed to contribute notwithstanding the court's order—Patel wrote that Bhatia "delays the inevitable 'day of reckoning' when judges who have been wrong for so long have to ultimately accept that Mrs. Clinton lost in 2016, being a woman alone in and of itself is not enough to always be right, and that message will become painfully clear for all dumb judges every time Senator Sanders and President Trump speak in 2020." And: "But the point is that when it comes to her children, Respondent is nothing short of a dummy." And: "Every interaction requires Petitioner practically needing to yell at Respondent, call her many disparaging names and behave like an insulting bully."

In addition, the court observed, the "record includes many insulting emails from Petitioner Patel to Respondent Bhatia, which demonstrate that he was motivated by malice rather than an effort to resolve the case." Once such email stated: "Once Trump is acquitted, Dumb People like you are not allowed to waste the time of Smart People like myself anymore just by giving birth twice and passing a bar exam on the third try. It's a great effort by you, but you're still DUMB. [¶] Seriously, it would actually be the BEST thing ever for your kids next week if you'd be willing to move on, since if you are not willing to do things My Way once Trump is Acquitted by the Senate, then the children are better off with you passing away by natural causes next week (since that's not against the Law) so that I can instead be in charge of their lives and not have to deal with you again. I assume if there is a God in the Universe, hopefully he or she or it

will reunite you with your own late father on or about February 5th if you still refuse to do things My Way." (Capitalization original.)

We will not second-guess the court's reasoned view that Patel's "threats and insults were intended" not to promote settlement but instead "to destroy Ms. Bhatia's mental calm." That Bhatia managed to endure "years of dilatory and frivolous litigation conduct" does not mean that Patel's conduct encouraged her to settle the case.

### 3. Patel has not established that he lacks the ability to pay the sanctions award.

" 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Appellants not only bear the burden of proof on appeal but also bear the burden of assuring the appellate record is sufficient to resolve the issues they raise. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296.) Here, Patel contends there is no substantial evidence to support the court's conclusion that he could afford to pay the $5,000 sanctions award. But Patel cites no evidence in the record to support his claim that he is "suffering from financial troubles" and is "in no position to pay these funds."[7]

---

[7] The record does not contain any evidence to support his claim that his inability to pay rests on some combination of China, the Covid-19 pandemic, and federalism. Nor does the record contain Patel's

Furthermore, as noted, the record before us does not include a reporter's transcript of the July 30, 2020 hearing on the order to show cause, a settled statement of what occurred at that hearing, or any other record of the oral proceedings. (See Cal. Rules of Court, rules 8.134 & 8.137.) As such, we do not know what arguments were advanced at the hearing about Patel's ability to pay. Based on the inadequate record before us, we cannot address the merits of Patel's claim. (See *Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1201 [lack of a reporter's transcript of the crucial proceedings requires us to "presume that what occurred at that hearing supports the judgment"]; *Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1003 ["Without the proper record, we cannot evaluate issues requiring a factual analysis."].) Therefore, he has not carried his burden on appeal. (See *Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1178 [affirming sanctions award under Family Code section 271 where sanctioned party failed to provide reporter's transcript and reviewing court was unable to evaluate sufficiency of the evidence].)

---

opposition to the court's order to show cause regarding sanctions or the income and expense declaration he filed with it.

## DISPOSITION

The orders are affirmed. Respondent Sonya Bhatia shall recover her costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


LAVIN, J.

WE CONCUR:


EDMON, P. J.


KNILL, J.*

---

* Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.