Filed 9/29/25  P. v. Ake CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | E083055 |
| Plaintiff and Respondent, | (Super.Ct.No. FVA025654) |
| v. | OPINION |
| FELIPE DEJESUS AKE, | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Alexander R. Martinez, Judge.  Affirmed in part and reversed in part.

Carl Fabian, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Felipe Dejesus Ake argues the trial court committed two errors in ruling on his Penal Code section 1172.6 petition. The first is that the petition was wrongly denied at the prima facie stage. We disagree and affirm the denial. The second is that the trial court had no authority to prohibit Ake from filing any such petition in the future. We agree and therefore reverse the order insofar as it instructs the clerk's office to reject future petitions.[1]

## I. BACKGROUND

In 2007, a jury convicted Ake of three counts of attempted murder (§§ 187, subd. (a), 664) and one count of shooting at an inhabited dwelling (§ 246). The jury also found true several enhancements and findings, including that the attempted murders were willful, deliberate, and premeditated (§ 664, subd. (a)), and Ake was sentenced to a total term of 105 years to life. In an opinion deciding Ake's case along with a co-defendant's, we corrected a clerical error in the abstract of judgment but otherwise affirmed the judgment. (*People v. Ramirez* (Mar. 11, 2010, E046699) [nonpub. opn.].)[2]

In 2022, Ake petitioned under section 1172.6. In 2024, the trial court summarily denied the petition. It stated that Ake was not prosecuted under the felony murder rule or the natural and probable consequences doctrine. It then also precluded Ake from filing any future section 1172.6 petitions. It said it would "specifically order[] the Clerk's

---

[1] Undesignated statutory references are to the Penal Code.

[2] In 2025, the trial court struck previously-stayed firearm enhancements tied to the shooting at an inhabited dwelling count.

2

office to shut the door on them and not accept them at all." The minute order reads: "Court orders the clerk's office to REJECT any PC1172.6 Petitions filed by the defendant."[3]

Two months after submitting his opening brief on appeal, Ake filed a habeas petition in this court and moved to consolidate the appeal with the petition. We denied the motion to consolidate but ordered that the habeas petition be considered with the appeal solely to determine whether an order to show cause should issue. We address the habeas petition by separate order.

## II. DISCUSSION

### A. *Merits of Section 1172.6 Petition*

Effective January 1, 2019, Senate Bill No. 1437 (Senate Bill 1437) (Stats. 2018, ch. 1015, § 4) amended California's murder statutes to curtail the use of two theories of vicarious liability for murder. These theories are grounded in situations where the defendant intended to commit some crime other than murder, yet a death resulted. The

---

[3] In full, the trial court's comments were as follows:

"So sir, you are not ordered to be transported forthwith back to the Department of Corrections. And if you wish to file an appeal, you may do so, and that would be to the Fourth District Court of Appeals of the decision.

"However, sir, you are precluded from filing anymore of these 1172.6 petitions. Just repeatedly filing them here in court will be fruitless. I'm specifically ordering the Court Clerk's office to reject any 1172.6 petitions that you attempt to refile. This denial, the way to challenge it, is to go to a higher Court of Appeal to somehow find I'm incorrect in my decision. But do not file again an 1172.6 petition. I'm specifically ordering the Clerk's office to shut the door on them and not accept them at all and return them back to you because I've denied this with prejudice."

theories are known as felony murder and the natural and probable consequences doctrine. Senate Bill 1437 also created a statutory procedure for convicted defendants to benefit from these changes to the law. This procedure allows eligible defendants to have convictions based on an abrogated theory of vicarious liability vacated and be resentenced for other crimes charged or for the charged crime. (§ 1172.6, subds. (a), (d).)

Effective January 1, 2022, Senate Bill No. 775 (Senate Bill 775) (Stats. 2021, ch. 551, § 2) expanded Senate Bill 1437's petition process to include individuals convicted of "attempted murder under the natural and probable consequences doctrine." (§ 1172.6, subd. (a).) Under the natural and probable consequences doctrine, "a defendant who aids and abets a confederate in committing a crime (the target offense) is liable for other crimes committed by the confederate if those further [nontarget] crimes were natural and probable consequences of the target offense." (*People v. Eynon* (2021) 68 Cal.App.5th 967, 973; accord, *People v. Smith* (2014) 60 Cal.4th 603, 611.) The aider and abettor's liability under the doctrine for any nontarget offense is vicarious, meaning that "'the nontarget offense is unintended [by the aider and abettor], [so] the mens rea of the aider and abettor with respect to that offense is irrelevant and culpability is imposed simply because a reasonable person could have foreseen the commission of the nontarget crime.'" (See *People v. Chiu* (2014) 59 Cal.4th 155, 164, superseded by statute on other grounds as stated in *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1103.)

"We review de novo an order denying a section 1172.6 petition at the prime facie review stage." (*People v. Flores* (2023) 96 Cal.App.5th 1164, 1170; see *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 930.)

Before Senate Bill 1437, including at the time of Ake's trial, a defendant could be convicted of attempted murder if the jury found he aided and abetted a target offense for which attempted murder was a natural and probable consequence. (See *People v. Favor* (2012) 54 Cal.4th 868, 879-880, superseded by statute on other grounds as stated in *People v. Hin* (2025) 17 Cal.5th 401, 442.) Nevertheless, as the trial court stated, Ake's jury was not instructed on the natural and probable consequences doctrine. Rather, it was instructed solely on a "kill zone" theory. (See *People v. Mumin* (2023) 15 Cal.5th 176, 193 ["a kill zone is an area which a defendant intentionally creates in order to kill all those within it to ensure the primary target's death"]; *People v. Nguyen* (2024) 103 Cal.App.5th 668, 677 ["In making the prima facie determination, the court may rely on the record of conviction, including the jury instructions and verdict forms"].) And "if the jury did not receive an instruction on the natural and probable consequences doctrine, the jury could not have convicted the defendant on that basis." (*People v. Offley* (2020) 48 Cal.App.5th 588, 599; accord, *People v. Coley* (2022) 77 Cal.App.5th 539, 548.) Accordingly, Ake is ineligible for relief under section 1172.6 as a matter of law.

Ake does not dispute that the jury was never instructed on the natural and probable consequences doctrine. Rather, he relies on two other arguments. First, he argues that "instructions on the kill zone theory should not have been given in the face of insufficient

5

evidence" (italics removed). Second, he argues that section 1172.6, as amended by Senate Bill 775, should be construed to allow relief for those convicted of "attempted murder under an imputed malice 'kill zone' theory" even though Senate Bill 775 expressly expanded relief only to those convicted of attempted murder under the natural and probable consequences doctrine.

Neither argument justifies section 1172.6 relief. Ake's argument that the jury should not have been instructed on the kill zone theory is an argument of trial error, and section 1172.6 "does not afford the petitioner a new opportunity to raise claims of trial error." (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947.) Ake's other argument, that section 1172.6 should be broadly construed to encompass all imputed malice theories, fails because a kill zone theory is not an imputed malice theory. A "kill zone theory is only a theory of liability for attempted murder" (*People v. McCloud* (2012) 211 Cal.App.4th 788, 796, fn. 4), and "express malice," not imputed malice, is "the mental state required to convict a defendant of attempted murder." (*People v. Smith* (2005) 37 Cal.4th 733, 741.) Thus, even if we were to accept, for the sake of argument, Ake's broad reading of the statutory language, he would still not be entitled to relief.

B. *Ability to File Future Section 1172.6 Petitions*

Turning to whether Ake may petition under section 1172.6 in the future, we find that the trial court erred in precluding any future petitions.

Both parties frame the issue as whether the vexatious litigant statutes (Code Civ. Proc., §§ 391-391.7) apply here. To our knowledge, no published case has addressed

whether the vexatious litigant statute applies to section 1172.6 petitions, which have been described as "'collateral postconviction proceedings'" (*People v. Delgadillo* (2022) 14 Cal.5th 216, 227). A future court may well hold that the vexatious litigant statutes do not apply to section 1172.6 petitions. (Cf. *People v. Harrison* (2001) 92 Cal.App.4th 780, 787 ["The vexatious litigant statutes apply to 'litigation,' which is expressly defined as 'any *civil* action or proceeding, commenced, maintained or pending in any state or federal court'"]; *In re Bittaker* (1997) 55 Cal.App.4th 1004, 1006 ["an inmate who has been declared a vexatious litigant retains the right to file a petition for writ of habeas corpus"].) However, we need not decide that issue here, as the trial court never declared Ake a vexatious litigant or otherwise invoked the vexatious litigant statutes.[4]

In any event, the restriction the trial court imposed on Ake, and the way the trial court imposed the restriction, go beyond the vexatious litigant statutes in significant ways. A vexatious litigant may file new litigation after obtaining leave from the presiding justice or presiding judge of the court where the litigation is proposed to be filed, assuming there is a preexisting order otherwise prohibiting new litigation. (Code Civ. Proc., § 391.7, subd. (a).) Here, however, the trial court did not just impose the condition of obtaining prior leave of court before filing another section 1172.6 petition. The order instructs the court's clerk's office to reject *any* future section 1172.6 petitions Ake might file, without qualification. Thus, under the order, if a future Legislature were

---

[4] As the People concede, the current section 1172.6 petition is the first one Ake has filed.

to expand section 1172.6 relief to those convicted under a kill zone theory, Ake would not be able to benefit, as his petition would not even be accepted for filing. Moreover, before being declared a vexatious litigant, a litigant is "entitled" to "a noticed motion, and a hearing which includes the right to oral argument and the presentation of evidence." (*Bravo v. Ismaj* (2002) 99 Cal.App.4th 211, 225.) Here, however, there was no hearing at all on whether Ake should be deemed a vexatious litigant, as no one had moved for such a determination.

"[T]here is no dispute that prisoners have a constitutional right of access to the courts." (*In re Jesusa V.* (2004) 32 Cal.4th 588, 601.) Moreover, "absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." (*Boddie v. Connecticut* (1971) 401 U.S. 371, 377.) And specifically in the context of section 1172.6 (formerly section 1170.95) petitions, our Supreme Court has noted the costs that meritless petitions might impose. (See *People v. Lewis* (2021) 11 Cal.5th 952, 968 ["[S]ome petitioners may nonetheless file petitions even when they are not eligible for relief. Section 1170.95 is clearly not without expense. But it is for the Legislature to balance costs with rewards and, here, the Legislature appears to have concluded that the benefits to be gained from providing broad access to counsel, in order to ensure that all those entitled to resentencing are able to obtain relief, outweigh the costs of appointing counsel in many cases where no relief will prove available."].) The bottom line is that a court cannot—particularly without an explanation

or a hearing—preclude a prisoner like Ake from seeking relief that the Legislature has sought to extend.

That is not to say that the People and the trial court must relitigate the issue every time someone in Ake's position needlessly files successive petitions. Issue preclusion, sometimes called collateral estoppel, remains available to curb any such abuses, if indeed a subsequent petition is an improper attempt to relitigate the same issues. (See *People v. Harden* (2022) 81 Cal.App.5th 45, 52 [finding collateral estoppel did not bar filing of second former section 1170.95 petition under forfeiture doctrine and new law exception].)

The trial court failed to identify any "countervailing state interest of overriding significance" (*Boddie v. Connecticut*, *supra*, 401 U.S. at p. 377) to justify, in the trial court's own words, "shut[ting] the door" on potential section 1172.6 relief. In our view, no such countervailing interest exists. Accordingly, we reverse the trial court's order denying Ake's section 1172.6 petition insofar as it instructs the clerk's office to reject future section 1172.6 petitions.

### III.  DISPOSITION

The January 5, 2024 order denying Ake's section 1172.6 petition is reversed to the extent it prohibits Ake from filing future petitions.  In all other respects, the order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

MILLER
Acting P. J.

CODRINGTON
J.