Filed 2/27/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT


| | |
|---|---|
| BENJAMIN WOODHOUSE,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>THE STATE BAR OF CALIFORNIA ET AL.,<br><br>  Defendants and Respondents. | B346662<br><br>Los Angeles County<br>Super. Ct. No.<br>25STCV02208 |


APPEAL from an order of the Superior Court of Los Angeles County, Robert B. Broadbelt, Judge.  Affirmed.

Benjamin Woodhouse in pro. per. for Plaintiff and Appellant.

Office of General Counsel of the State Bar of California, Ellin Davtyan, Kirsten Galler and Raymond R. Rollan for Defendant and Respondent the State Bar of California.

Gibson Dunn & Crutcher, Kristin A. Linsley and Austin Schwing for Defendants and Respondents Meta Platforms, Inc. and Nike, Inc.

Davis Wright Tremaine and Dan Laidman for Defendant and Respondent Warner Bros. Discovery, Inc.

Wilson Sonsini Goodrich & Rosati, Matthew R. Reed and John B. Kenney for Defendant and Respondent Alphabet, Inc.

————————————

The trial court ruled Benjamin Woodhouse is a vexatious litigant. We affirm this finding. We hold that, as a matter of law, Woodhouse's complaint in this case asserts facts that are delusional: his suit has no possibility of success. We likewise affirm the trial court orders barring Woodhouse from future self-represented suits that lack pre-filing approval and posted security. Undesignated citations are to the Code of Civil Procedure.

I

Woodhouse holds himself out as the owner and principal of a company called Havensight Capital LLC. Woodhouse is an attorney. His California bar number is 261361. In 2024, the State Bar of California, which Woodhouse made a defendant in this action, placed him on involuntary inactive status, meaning Woodhouse cannot practice law until this status changes. In addition to the State Bar, the respondents in this action are Meta Platforms Inc., Alphabet, Inc., Nike, Inc., and Warner Bros. Discovery Inc.

A

To summarize, Woodhouse filed many lawsuits before his complaint in this case. All his earlier suits were dismissed and all his past appeals failed. Woodhouse and his company

2

Havensight have been declared vexatious litigants by the Central District of California and the Southern District of New York, with the latter issuing a nationwide injunction prohibiting them from filing new cases in federal court without (1) pre-filing approval and (2) the posting of security. Many judges have referred Woodhouse to the State Bar of California.

We recount the relevant history in more detail. It began in 2014 in federal court. Woodhouse filed his first complaint that year on behalf of his company Havensight against Nike in the Central District of California. (*Havensight Capital LLC v. Nike, Inc.* (C.D.Cal., Sep. 12, 2014 2:14-CV-07153) 2014 WL 4637513.) Woodhouse alleged the "Nike FC" brand logo infringed a logo for a Havensight-owned soccer brand "St. Thomas FC." (*Ibid*.) The court dismissed the case. (*Havensight Capital LLC v. Nike, Inc.* (C.D.Cal., Nov. 19, 2014, CV 14–7153–R) 2014 WL 12613382.) In a later case, the court recounted a series of frivolous requests and other actions by Woodhouse that prolonged the proceedings in the initial case, harassed Nike, and burdened the court—including serial requests for default after Nike had timely moved to dismiss, a writ of execution falsely claiming a judgment of almost $250 million in favor of Havensight, and a series of "post-dismissal motions, applications, and requests for default judgment." (*Havensight Capital LLC v. Facebook, Inc.* (C.D.Cal. Sept. 24, 2018, CV 17-6727 FMO (MRWx)) 2018 WL 6340757.) The court struck or denied all of Woodhouse's requests. (*Ibid*.)

The day after that case was dismissed, Woodhouse, representing Havensight, filed a different action against Nike in the Central District of California, alleging antitrust violations and tortious interference in the sale of soccer gear. (*Havensight Capital LLC v. Nike, Inc.* (C.D.Cal., Nov. 20, 2014, CV 14-8985)

2014 WL 6542776.)  The court dismissed that action. (*Havensight Capital LLC v. Nike, Inc.* (C.D.Cal., Feb. 18, 2015, No. CV 14–8985–R) 2015 WL 993334.)  The court declared Havensight to be a vexatious litigant and barred it from filing any new action in the Central District of California "that arises from or relates to Havensight Capital LLC and its brand 'St Thomas F.C.' against Nike, Inc." (*Havensight Capital LLC v. Nike, Inc.* (C.D.Cal. Apr. 22, 2015, CV 14–7153–R, CV 14–8985–R) 2015 WL 3544111.)

A different Central District of California judge denied Havensight's motions to disqualify an earlier judge and to seek reconsideration.  (*Havensight Capital LLC v. Nike, Inc.* (C.D.Cal. Mar. 31, 2015) 2:14-CV-07153-R, Dkt. 110.)  The court turned the matter over to the State Bar of California "for whatever action that body deems appropriate."  (*Ibid.*)

In May 2015, Havensight filed a complaint against Facebook (now Meta) in the Central District of California, seeking hundreds of millions of dollars for alleged overcharges on seven "pay-per-click" Facebook ads.  (*Havensight Capital, LLC v. Facebook, Inc.* (C.D.Cal., June 5, 2015, CV 15–3758 FMO) 2015 WL 12819160.)  The court dismissed the case.  (*Havensight Capital, LLC v. Facebook, Inc.* (C.D.Cal., June 29, 2015, CV 15–3758 FMO) 2015 WL 3948380.)  The court warned that, had it not dismissed the case, it would have issued an order to show cause whether Havensight should be declared a vexatious litigant.  (*Ibid.*)

Woodhouse filed a similar complaint against Google Inc., now known as Alphabet Inc., in the Central District of California.  (*Havensight Capital LLC v. Google, Inc.* (C.D.Cal., July 15, 2015, 2:15-CV-05297-PSG, Dkt. 1).)  The court dismissed the complaint.

(*Id.*, Dkt. 31.) Woodhouse filed an ex parte application to reopen the case, to disqualify the judge, and to enter a default judgment against Google. (*Id.*, Dkt. 32.) The district court denied that motion and admonished Woodhouse that future "misuse of ex parte applications will be sanctioned." (*Id.*, Dkt. 35.)

Woodhouse filed a similar complaint on Havensight's behalf against Facebook in California *state* court. In March 2016, the court sustained Facebook's demurrer, explaining Havensight had not stated a cause of action. (*Havensight Capital LLC v. Facebook, Inc.* (Cal.Super., Jan. 1, 2016, CIV537307) 2016 WL 4445919.) Woodhouse filed an amended complaint. Facebook again demurred, and a different judge sustained the demurrer without leave to amend. (*Havensight Capital, LLC v. Facebook, Inc.* (Cal.Super., June 16, 2016, CIV537307) 2016 WL 4410551.)

The Court of Appeal affirmed, and the California Supreme Court denied review. (*Havensight Capital LLC v. Facebook, Inc.* (Apr. 27, 2017, A149366) [nonpub. opn.], review den. July 12, 2017, S241716).)

After the Supreme Court's ruling, Havensight filed a third action against Facebook—now back in the Central District of California. (*Havensight Capital LLC v. Facebook, Inc.* (C.D.Cal., Sept. 13, 2017, No. 2:17-cv-06727) 2017 WL 4061961.) The court dismissed Havensight's complaint, declared Havensight a vexatious litigant, and ordered Woodhouse to pay $71,269.89 in attorneys' fees and expenses. (*Havensight Capital LLC v. Facebook, Inc.,* (C.D.Cal., Sept. 13, 2018, 2:17-cv-06727) 2018 WL 6340757; *Havensight Capital, LLC v. Facebook, Inc.* (C.D.Cal., Nov. 9, 2018, 2:17-cv-06727, Dkt. 59).)

5

The Ninth Circuit affirmed.  (*Havensight Capital LLC v. Facebook, Inc.* (9th Cir. Aug. 26, 2019, No. 18-56304) 776 Fed.Appx. 420.)

In August 2021, Woodhouse filed an action against "Nike, Facebook, their counsel Gibson Dunn & Crutcher LLP, Alphabet, Inc., the United States Government, the Chief Justice of the United States, and a number of federal judges in this district and the Ninth Circuit" alleging, as the district court described it, "a stream of nonsensical and imagined allegations—including accusations of government torture and assassination attempts." (*Woodhouse v. U.S. Gov't* (C.D.Cal., Nov. 24, 2021, No. 2:21-cv-06372) 2021 WL 6333468.)  The court dismissed that case in November 2021.  (*Ibid.*)  The court found that Woodhouse and Havensight were alter egos of, and were in privity with, one another:  the vexatious litigant orders applied to Woodhouse. (*Ibid.*)  The court held Woodhouse in contempt for violating those orders and for failing to pay sanctions.  (*Ibid.*)  The court referred Woodhouse to the State Bar.  (*Ibid.*)

The Ninth Circuit affirmed.  (*Woodhouse v. U.S. Gov't* (9th Cir., May 23, 2023, No. 22-55045) 2023 WL 3600032.)

While the Ninth Circuit appeal was pending, Woodhouse and Havensight filed another complaint in the Central District of California—again without complying with the orders imposing pre-filing conditions and without paying any of the previously-imposed sanctions.  (*Woodhouse v. U.S. Gov't* (C.D.Cal., Jan. 5, 2022, 2:22-CV-00079) 2022 WL 59509, Dkt. 1.)  The complaint asserted conspiracy and judicial corruption claims against Nike, Meta, Alphabet, and several federal judges and attorneys with the U.S. Attorney's Office who had represented the government defendants in the earlier actions.  (*Ibid.*)  The court dismissed the

defendants from the case.  (*Woodhouse v. U.S. Gov't* (C.D.Cal. 2:22-CV-00079) Dkt. 64.)  It referred Woodhouse to the State Bar and the Central District's Standing Committee on Discipline. (*Id.*, Dkt. 93.)  It issued a vexatious litigant order protecting Alphabet from further suits.  (*Woodhouse v. U.S. Gov't* (C.D.Cal., June 10, 2022, 2:22-CV-00079) 2022 WL 2232521.)

The Ninth Circuit affirmed.  (*Woodhouse v. U.S. Gov't* (9th Cir., May 23, 2023, No. 22-55598) 2023 WL 3600024.)

In January 2022, Woodhouse filed another complaint in the Central District of California.  (*Woodhouse v. U.S. Gov't.* (C.D.Cal., Jan. 27, 2022, No. 2:22-CV-00285) Dkt. 21.)  He alleged obstruction, fraud, and conspiracy, and named as defendants Nike, Meta, Alphabet, and others.  (*Ibid*.)  The court struck Woodhouse's claims against Nike and Meta.  (*Woodhouse v. U.S. Gov't* (C.D.Cal. Mar. 2, 2022, No. 2:22-CV-00285) Dkt. 52.)  The court dismissed the remaining claims against Alphabet. (*Woodhouse v. U.S. Gov't* (C.D.Cal., May 2, 2022, 2:22-cv-00285) 2022 WL 1405659.)

The Ninth Circuit affirmed.  (*Woodhouse v. U.S. Gov't* (9th Cir., May 23, 2023, No. 22-55636) 2023 WL 3600025.)

Woodhouse filed a new complaint, now *in the District of Columbia*, against Nike, Meta, Alphabet, and other defendants. (*Woodhouse v. Meta Platforms, Inc.* (D.D.C., July 3, 2023, No. 1:23-CV-01924) Dkt. 1.)  That court dismissed the complaint *sua sponte*.  (*Woodhouse v. Meta Platforms, Inc.* (D.D.C., July 13, 2023, No. 23-cv-01924) 2023 WL 4531827.)  It ruled the allegations in Woodhouse's complaint rest "on the kind of fantastic and delusional claims that warrant dismissal sua sponte."  (*Ibid*.)  Specifically, Woodhouse alleged the defendants "operated a 'genocide hotel' in Pismo Beach, CA."  (*Ibid*.)

Woodhouse also alleged the defendants sent commandos to assassinate him on his property. (*Ibid.*)

The D.C. Circuit affirmed. (*Woodhouse v. Meta Platforms Inc.* (D.C. Cir., Oct. 30, 2023, No. 23-5188) 2023 WL 7268255.) "The district court correctly concluded that [Woodhouse's] complaint, which lacked an arguable basis either in law or in fact, was frivolous." (*Ibid.*)

In August 2023, a month after the district court's dismissal in the District of Columbia case, Woodhouse filed an action in the *Southern District of New York* against Nike, Meta, Alphabet, and other defendants, raising claims that "appear[ed] to mirror, or are similar to, the ones asserted in his previous action in the District Court for the District of Columbia." (See *Woodhouse v. Meta Platforms Inc.* (S.D.N.Y., Sept. 8, 2023, No. 23 Civ. 7000) 2023 WL 5939036.) The District Court recounted allegations that included Woodhouse's claims about a genocide hotel. (*Ibid.*) The district court *sua sponte* dismissed that complaint with prejudice. (*Ibid.*.) It issued a nationwide injunction prohibiting Woodhouse and any company he owns and controls from filing any new federal court action relating to the same allegations absent leave of court and compliance with pre-filing conditions. (*Woodhouse v. Meta Platforms Inc.* (S.D.N.Y. 2023) 704 F.Supp.3d 502, 521.) The court noted that, were Woodhouse to start filing similar suits in California state court, that development "would factually support the imposition of [a] filing injunction running to all courts in the nation—state as well as federal." (*Id.* at p. 520, fn. 15.) "Should Woodhouse direct his vexatious litigation to state courts," the court cautioned, "an appropriate court" might find cause "for entry … of an injunction reaching state courts." (*Ibid.*)

The Second Circuit affirmed. (*Woodhouse v. Meta Platforms, Inc.* (2d Cir., Sept. 26, 2024, 23-7973-cv) 2024 WL 4297471.) It noted Woodhouse's complaint set "forth no facts that suggested such acts were remotely plausible." (*Ibid.*) "Simply put, the district court did not abuse its discretion in concluding that Woodhouse's allegations were and are irrational, and fell solidly in the realm of fantasy or delusion." (*Ibid.*) "Woodhouse had a history of filing frivolous lawsuits, at least one of which alleged the same 'genocide hotel' conspiracy and was also dismissed as frivolous." (*Ibid.*) "[F]ailing to provide notice and an opportunity to be heard before a sua sponte dismissal" is bad practice in some contexts and reversible error in others, but in this case there was no error. (*Ibid.*) "Although Woodhouse was not given notice here that his allegations were vulnerable to dismissal, his pattern of prior litigation would have informed him that these kinds of claims were defective." (*Ibid.*)

B

We describe Woodhouse's complaint in this case.

As a self-represented litigant, Woodhouse filed a 53-page complaint in the superior court on January 27, 2025. In his complaint, Woodhouse listed his address as in Pismo Beach, California. The factual allegations are diverse but include themes that recur in Woodhouse's papers. We limit our description to five themes: (1) decapitations; (2) genocide hotel; (3) attacks on Woodhouse; (4) actress Kate Bosworth; and (5) incineration of the Honorable Carlos Bea of the Ninth Circuit.

In what follows, we excerpt portions of Woodhouse's allegations. We excerpt extensively to convey the nature and persistence of Woodhouse's themes. We note Woodhouse often uses the terms "Conflicted Parties," "Conflicted Counsel," and

9

"Triply Conflicted Counsel." Woodhouse also refers to "Counsel Not of Record." He does not define these terms.

1. *Decapitations*. There are many decapitations in the world Woodhouse perceives. "Conflicted parties" have decapitated "female fellow California Bar Members." Woodhouse "actually had to watch [his] colleagues be decapitated." "9th Circuit Judge Miller . . . also witnessed Ms. Bosworth, and Ms. Fernandez Beshore be decapitated, he did nothing to stop it . . . ." "It is also questionable for National press to be engaging in felonious conduct, in order to participate in genocide. The Leaders of the National Press need to reflect, why our Federal Judges, and National press Members, would temporarily lapse into genocide movements, and what kind of mental issues, would cause a Member of the National Press, to support an elderly lady, who is helping to decapitate and raping minors, as a result of mental illness, after failing to write her name, at the State Court level. There has to be a higher level of discipline, and higher level of accountability from U.S. Leaders. They need to stop taking bribes, and think beyond second grade rhetoric, and never again uphold the decapitations of minor and women, off of six red flagged cases." "As the 2,000 assassination attempts were not successful, Counsel Not of Record, did not resolve the matters, and improve chance of life for the Leaders of his Clients, instead he commenced decapitating defenseless females, who were fellow members of the California Bar, and colleagues of Woodhouse. Ms. Michelle Fernandez Beshore, and Ms. Heather Baker Dobbs, were, both decapitated in front of Woodhouse . . . Coming to my house, decapitating women, putting on torture shows, and aggrandizing those who have plead felonies, and conflicts, is more than any one human being's patience can endure." "Woodhouse

10

had offered notice in writing to the U.S. Attorneys, earlier that week, to extract [Kate Bosworth], after Woodhouse's colleagues had been decapitated by Gibson Dunn Inc."

*2. Genocide hotel.* Woodhouse alleges there is a genocide hotel "across the street from me" in Pismo Beach. "The genocide hotel remains open, and the Counsel Not of Record, who is an enemy combatant, continues to yell slurs throughout the night with Judge Miller, despite Woodhouse's testimony in person, in the 2nd Circuit." "As there have been no detentions, Woodhouse is unsure if People are still dying in the genocide hotel, he is sure that Counsel Not of Record, is still yelling slurs in the middle of the night, and making assertions of felonious misrepresentation of resolutions, regarding the genocide matters, at hand. Additionally, the 2nd Circuit has followed this act up, in upholding genocide, terrorism, infanticide, the decapitations of women and minors, and ending conflict checks and Court admissions, after Woodhouse testified in the 2nd Circuit to watching Linsley hand off and participate in the sodomization and decapitation of a minor, after Woodhouse's comely female colleagues, and Ms. Kate Bosworth, had already been decapitated in the same hotel, which Woodhouse also witnessed and testified to." "None of these acts, brought genocide hotel to closure and default. Instead, a 9th Circuit Judge, Judge Miller, took up illegal residence in the genocide hotel, commenced sleeping with Alphabet Inc.'s Counsel, and upheld the most felonies, conflicts, violations, and red flagged cases, in U.S. legal history, after Judge Bea was incinerated." "Further, such behavior, could be an explanation as to why C.N.N. would have published photos of an imposter of Ms. Bosworth, a few days, after Woodhouse filed into the federal record, watching her being decapitated by

11

Seminole Cell, and Counsel Not of Record, in the genocide hotel, across from his house. This event, came after Woodhouse ordered U.S. Attorneys of Record, in writing, to extract Bosworth immediately from the hotel, and even offered to do it himself."

3. *Attacks aimed at Woodhouse.* "[T]he Conflicted Parties attempted to execute Woodhouse, on his property, in over 2,000 assassination attempts. The Conflicted Parties used contractors to begin with, then Meta Platforms Leaders paid $50MM U.S. to the Yakuza for hits, and then Nike paid Seminole cell similar amounts for hits, and eventually, Russian dissidents, and then Russian and Moldovan soldiers would also be hired, to kill Woodhouse." "The Conflicted Parties have funded the espionage and terrorism discussed below, which is racketeering via operation of law, as any act, intended to terrorize U.S. citizens, would surmount to racketeering. These acts, here, include, but are not limited to, mass decapitations, over 2,000 assassination attempts, funding of foreign national armies, impeaching testimony with doctored evidence, and bribing of the Trial Counsel, via organized criminals." "In this matter, we have multiple singular acts, with every one of the 2,000 assassination attempts, and every decapitation of a women or minor, being a singular act of terrorism, notwithstanding the coup de gras, of the financing of the Russian and Moldovan troops."

4. *Kate Bosworth.* "After failing to assassinate Woodhouse, the Conflicted Parties commenced decapitating women and minors. Woodhouse witnessed two female colleagues executed, Ms. Bosworth, the most famous actress in the world, one minor, and one 2nd Circuit Clerk decapitated." "Shortly, thereafter, after hearing Kate Bosworth's voice, Woodhouse requested that the U.S. Attorneys extract Ms. Bosworth, with an urgency of life,

with either, Federal law enforcement, or, military personnel. Woodhouse even offered to extract her himself, with her permission, and permission from the U.S. Attorneys to use deadly force. Three days later, Ms. Bosworth was decapitated, Woodhouse disrupted three decapitation ceremonies, at which point the Seminole cell, abandoned the ceremony, and executed her within seconds, in the parking lot of the genocide hotel."

5. *Judge Bea*. "[W]hen Conflicted Parties decapitate female fellow California Bar Members, decapitate the most famous actress in the world, incinerate 9th Circuit Judge Carlos Bea, and execute what is estimated to be, over 15,000 victims, in front of [Woodhouse's] house, and prevail, after pleading the above, it calls into question, whether any Constitutional rights, and values, are still available to the American People?" "[Ninth Circuit] Judge Miller also witnessed Ms. Bosworth, and Ms. Fernandez Beshore be decapitated, he did nothing to stop it, and did not feel compelled to take down his Order, which verges on insanity, after Triple Conflicted Counsel burned alive his colleague, Judge Bea." "[O]nce the matter was taken up with the 9th Circuit, Judge Bea, thought he would make the U.S. Government settle, such that he could take illegal consideration from the Conflicted Private Parties, but such benevolent act to the Conflicted Parties, did not sit well with Counsel Not of Record, and Judge Bea was incinerated in front of Woodhouse, and around 5 p.m. when it was still daylight."

Based on these and other factual allegations, Woodhouse's current complaint asserted causes of action for what he terms (1) "Defamation of Woodhouse and Violation of his constitutional rights under 42 U.S.C. section 1983 and California Civil Code section 45, 6"; (2) fraud; (3) "Civil RICO"; (4) "I.I.P.E.R."; and (5)

13

"Economic Espionage Via Funding of Foreign Militaries Based on California Civ. Section 3426.1, and the Federal Economic Espionage Act, Which Extends To All Conflicted Parties, Foreign Actors, State Agencies, and Warner Bros. Discovery."

C

The record gives the history of Woodhouse's status with the California Bar.

The State Bar of California placed Woodhouse on involuntary inactive status. Licensed attorneys in California are either active or inactive. (See Bus. & Prof. Code, § 6003.) The State Bar Court may enroll a licensed attorney as inactive due to mental infirmity or illness. Inactive licensees are not authorized to practice law. (Bus & Prof. Code, § 6006.) Licensees who have been involuntarily enrolled as inactive cannot be reinstated to practice law unless reinstatement is directed by a court order. (Bus & Prof. Code, § 6007, subd. (e)(2).) The Office of Chief Trial Counsel may initiate a proceeding for involuntary inactive enrollment under section 6007, subdivision (b), by filing a motion in the State Bar Court. (See Rules Proc. of State Bar, rule 5.171(a) [Bus & Prof. Code, § 6007, subd. (b)(1)]; 5.181 [Bus & Prof. Code, § 6007, subd. (b)(2)]; 5.191(B)(2) [Bus & Prof. Code, § 6007, subd. (b)(3)].) The State Bar Court determines if clear and convincing evidence has established grounds for involuntary active enrollment. If so, the court transfers the licensee to inactive status. (See Rules Proc. of State Bar, rules 5.172–5.173.) These proceedings are confidential.

On November 30, 2024, shortly after the Second Circuit affirmed the district court's dismissal of Woodhouse's claims and the issuance of the nationwide injunction against him, the State Bar ordered Woodhouse inactive and, consequently, rendered him

14

ineligible to practice law in California. Woodhouse then sent messages to the State Bar that included a threat of violence against State Bar Judge Yvette Roland, who had presided over Woodhouse's bar proceedings.

Woodhouse's November 2024 email to the State Bar included the following about "Triple Conflicted Counsel." The emphasis is ours.

"[A]fter [Triple Conflicted Counsel] told me that she had coffee with Judge Bea earlier in the morning, when I watched Gibson Dunn burn Judge Bea to death six months ago. Mr. Binder and Judge Roland *can also legally be executed* with all California Bar Members, as the act of disbarment, is a furtherance of the conspiracy to engage in genocide acts... [¶] I will offer five business days for the California Bar to rescind all charges, and charge Triple Conflicted Counsel, otherwise, I will serve the California Bar at the end of December, and we will proceed with the remediation program. [¶] If I find that Judge Roland is connected to any of the organized crime groups that the Conflicted Parties paid for assassination attempts, *I will drown her to death*, under all possible options individually."

On December 2, 2024, Woodhouse included the following in an email, again with our emphasis: "I will offer up five business days from today, and then *I intend to let them kill every member of the California Bar*, as I will not allow any more People to be decapitated, because of People being on the take."

Woodhouse sent other threatening emails as well.

Based on Woodhouse's threats, on December 23, 2024, the State Bar filed in the Los Angeles Superior Court Family Law Division a petition on behalf of Judge Roland for a Workplace Violence Restraining Order. After a hearing, the court granted

15

the State Bar's petition and imposed a three-year order restraining Woodhouse from coming within 100 feet of Judge Roland.

D

We summarize the trial court proceedings in this matter.

As part of the Workplace Violence Restraining Order proceedings, Woodhouse filed a "Cross Complaint." The trial court dismissed this filing. Woodhouse refiled it on January 27, 2025 as a complaint in the superior court, thus commencing the proceeding that is the subject of this appeal. Woodhouse named as defendants Nike, Meta, Alphabet, as well as the State Bar of California and Warner Bros, Discovery, Inc.

Defendants moved for an order under section 391 declaring Woodhouse a vexatious litigant.

Each defendant asked the trial court to find that Woodhouse was a vexatious litigant and to require him to post security of $10,000 before his claims as to each defendant could proceed. They also asked the court to enter a pre-filing order requiring Woodhouse to seek leave of the presiding judge or justice of any California court before he may file new litigation.

Woodhouse opposed the motions. In these oppositions, Woodhouse asserted "the Conflicted Parties, here, have financed the killing, in a boutique beach hotel, in Pismo Beach, CA. over a 36 month period, of almost twice the number of Americans, killed by Osama Bin Ladin in the 9/11 attack, restitution, and self-reporting are the only chance at life for the Leaders of these Conflicted Clients, and these Firm Members, under U.S. counter terrorist protocols, irrespective of what this State Court decides . . . . [T]he Conflicted Counsels offer no real explanations, as to why they have interfered with Woodhouse's Customers, why they

16

have hacked the California State Appellate system, to make Woodhouse a drug convict, during his Pepperdine law training, and as to why they have decapitated a 2nd Circuit Clerk, one female minor, two of Woodhouse's comely female colleagues, and the most famous actress on earth, in Ms. Bosworth, all, in Woodhouse's witness. . . .  [T]he type of black sports tape used on a dead infant left at the base of Woodhouse's housing development, now adorns the fire hydrant at the base, in a clever attempt, to cover up, this sadistic act."

Another portion of Woodhouse's opposition faulted Warner Bros. Discovery for failing to produce evidence that Kate Bosworth was alive.  Woodhouse suggested this failure to produce Bosworth showed Warner was complicit in Bosworth's alleged death.

The defendants replied to Woodhouse's oppositions.

The trial court granted the defendants' vexatious litigant motions.  The court ruled Woodhouse was a vexatious litigant under two statutory definitions.  First, Woodhouse qualified as a vexatious litigant under section 391, subdivision (b)(4), because he "was declared to be a vexatious litigant by the United States District Court for the Central District of California" and by "the United States District Court for the Southern District of New York" based on claims involving "substantially similar facts and transactions that are alleged in this action."  Second, Woodhouse was a vexatious litigant under section 391, subdivision (b)(1), because he "commenced or maintained . . . five litigations in propria persona within the immediately preceding seven-year period," and each of "those five litigations were finally determined adversely to [Woodhouse]."

17

The trial court determined there was no reasonable probability that Woodhouse would prevail in the litigation against any of the defendants. The trial court explained that Woodhouse failed to allege facts sufficient to establish the elements of any of his five causes of action. The court ordered Woodhouse to post a security of $10,000 as to each of the defendants within 45 days of each of the court's orders as a condition to proceeding with the action as to each of them.

The court likewise issued pre-filing orders under section 391.7. These orders prohibit Woodhouse, "directly or indirectly through entities that he owns or controls . . . from filing any new litigation in the courts of this state in propria persona without first obtaining leave of the presiding justice or presiding judge of the court where the litigation is proposed to be filed."

On July 22, 2025, the trial court dismissed Woodhouse's action because he had not posted security.

Woodhouse appealed. In his *notice of appeal*, Woodhouse wrote that, "as the Complaint, here, states that the Defendants have executed over 15,000 individuals, in a single beach hotel, over a 36 month period, and that Nike paid uniformed Moldovan forces, and Russian special forces with machine guns to breach his residence. Additionally, Woodhouse testified to the Conflicted Parties brandishing an active atomic weapon on Woodhouse's property, and that the U.S. Senate has been briefed on the atomic attack, in Pismo Beach, CA. Woodhouse has filed for death warrants, here, against Judge Broadbelt III, and Mr. Van Schwing, who is not a U.S. citizen, as, both, the participation, and the upholding of an atomic attack, against the U.S. Government, is unequivocal treason, and colloquially absolutely mentally retarded. This atomic attack has been reported to the Nuclear

18

Regulatory Agency, and to the California U.S. Senators by Woodhouse."

## II

We affirm the orders of the trial court.

## A

Vexatious litigants use the justice system as a weapon to impose costs on real or imagined enemies. Vexatious litigants often represent themselves and thus avoid the cost of counsel but force defendants to retain counsel, which is expensive. Using courts as a tool thus to inflict disproportionate costs perverts a noble ideal. It turns an institution designed to resolve conflict into a weapon that magnifies conflict. This conduct can cause serious financial injury to the unfortunate object of the attack. (*Camerado Ins. Agency, Inc. v. Superior Court* (1993) 12 Cal.App.4th 838, 842.)

Self-represented plaintiffs who avoid retaining licensed attorneys dodge the gatekeeping function that retained counsel can perform. Retained attorneys generally act as gatekeepers against frivolous litigation. Attorneys are governed by prescribed rules of ethics and professional conduct, and, as officers of the court, are subject to disbarment, suspension, and other disciplinary sanctions not applicable to self-represented litigants. Retained attorneys also are bound by rules of ethics and rely on their reputation in the community to sustain their careers. They are less likely to file frivolous claims. The threat of malicious prosecution liability for bringing an unmeritorious action or special proceeding without probable cause may do little to deter a vexatious litigant but is likely to have more significance for a vexatious litigant's attorney. (*Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1176.)

19

Legislatures have enacted vexatious litigant statutes to curb misuse of the court system. These persistent and obsessive litigants abuse the justice system, thereby wasting court resources and harming other parties waiting their turn before the courts. The California Legislature first enacted sections 391.1 through 391.6 in 1963 to combat the tendency of vexatious litigants to engage in meritless litigation. These sections empower defendants to stay pending litigation by moving to require a vexatious litigant to furnish security if the court determines there is no reasonable probability the plaintiff will prevail. Failure to post the security results in dismissal of the litigation in favor of the defendant. (*Bravo v. Ismaj* (2002) 99 Cal.App.4th 211, 220–221 (*Bravo*).)

In 1990, the Legislature enacted section 391.7 to provide the courts with an additional means to counter misuse of the system by vexatious litigants. Section 391.7 operates beyond the pending case and authorizes a court to enter a prefiling order prohibiting a self-represented vexatious litigant from filing new litigation without first obtaining permission from the presiding bench officer. That officer may condition the filing of the litigation on posted security as section 391.3 provides. (*Bravo, supra,* 99 Cal.App.4th at p. 221.)

Sections 391.1–391.6 differ from section 391.7 in some significant ways. The former sections allow the litigant to proceed with the case without showing a reasonable probability of prevailing, but the litigant will have to furnish security to proceed if the court finds success improbable. The latter section bars the litigant from filing the action or proceeding if success is considered improbable. Even if the court finds a requisite probability of success, it may compel the litigant to furnish

20

security as a condition to maintaining the action.  Vexatious litigant statutes are constitutional and do not deprive a litigant of due process of law.  (*Bravo, supra,* 99 Cal.App.4th at pp. 221–222.)

We independently review questions of statutory interpretation.  (*John v. Superior Court* (2016) 63 Cal.4th 91, 95.) We deferentially review fact finding.

B

Although Woodhouse's notice of appeal references only the trial court's May 2025 order granting Nike and Meta's vexatious litigant motion and related relief, the respondents ask us to construe Woodhouse's appeal as encompassing the corresponding orders in favor of the State Bar, Warner, and Alphabet.  They likewise request that we construe the appeal as including the trial court's July 2025 order dismissing the action for Woodhouse's failure to furnish security.

We assent to these unopposed requests.  We may liberally construe Woodhouse's notice of appeal because it is reasonably clear from this notice that Woodhouse seeks relief from all orders joined to the order the trial court granted, and Woodhouse's omission does not prejudice the respondents.  (See *In re Joshua S.* (2007) 41 Cal.4th 261, 272.)  The Rules of Court allow us to treat a notice of appeal filed after the trial court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment.  (Cal. Rules of Court, rule 8.104(d)(2).)  We exercise our discretion to do so because no motions remain pending before the trial court and we can decide the propriety of the orders against Woodhouse from the undisputed facts in the record.

## C

Substantial evidence supports the trial court's orders.

The trial court found Woodhouse had, in the preceding seven-year period, commenced at least five lawsuits that courts ultimately determined against him. (§ 391, subd. (b)(1).)

The trial court made the alternative finding that courts previously declared Woodhouse to be a vexatious litigant on similar facts. (§ 391, subd. (b)(4).)

Our recitation of the record shows overwhelming support for both findings. We do not repeat our earlier presentation.

Woodhouse makes no cogent argument to the contrary in his briefing to us. This briefing is a renewed excursion through Woodhouse's world of decapitations and so forth. For instance, on page 10 of his opening papers, Woodhouse offers that "Conflicted Counsel decapitated the 2nd Circuit Clerk, hired in quid pro quo, within ten days from him arriving at the hotel, across from Woodhouse's property." There is more of the same elsewhere in Woodhouse's briefs to us.

The trial court also ruled there was no reasonable probability Woodhouse would prevail on his claim against any Respondent. (See § 391.1, subd. (a).)

As a matter of law, this ruling was correct.

California precedent supports the trial court's ruling. For instance, in *Huang v. Hanks* (2018) 23 Cal.App.5th 179, 181 (*Huang*), a self-represented litigant filed requests for civil harassment restraining orders against defendants Tom Hanks, Arnold Schwarzenegger, the Dalai Lama, Mark Zuckerberg, Monica Lewinsky, and 26 other prominent personalities. The plaintiff alleged these "defendants are 'a lot of people with Hollywood background or Scientology background ... or political

22

background,' who 'control [a] mental department in Texas,' by which 'they falsely accuse [him] and use [ ] technology from mental department (mind reading) [to] attack[ him] secretly[,] … ask[ing] some adults to keep on stalking [him] and harass[ing] and threaten[ing him] by nano probes." (*Ibid.*) The trial court dismissed the actions as patently frivolous. The Court of Appeal affirmed because California courts possess the inherent authority to dismiss cases that are fraudulent or vexatious. (*Id.* at p. 182.) That includes complaints that are frivolous because they lack an arguable basis either in law or in fact or that include claims describing fantastic, delusional, or fanciful scenarios. (*Ibid.*)

The *Huang* opinion cited many precedents that supported its holding. (*Huang, supra,* 23 Cal.App.5th at pp. 181–182.)

Other courts have applied the *Huang* rule to Woodhouse's past lawsuits. For example, the District Court of the District of Columbia summarily dismissed Woodhouse's complaint presenting similar allegations about a genocide hotel, assassination attempts, and a conspiracy with foreign governments and commandos, concluding that the "[c]omplaint rests on the kind of fantastic and delusional claims that warrant dismissal sua sponte." (*Woodhouse v. Meta Platforms, Inc.* (D.D.C., July 13, 2023, No. 23-cv-01924) 2023 WL 4531827.)

The Southern District of New York cited similar allegations in dismissing Woodhouse's action as frivolous, concluding that his "allegations about the defendants, including, but not exclusive to, their alleged conspiratorial and corrupt behavior, attempts to assassinate Woodhouse, sexual abuse and murders of others, etcetera, are fantastic and delusional." (See *Woodhouse v. Meta Platforms Inc.* (S.D.N.Y., Sept. 8, 2023, No. 23 Civ. 7000) 2023 WL 5939036.)

23

These earlier *sua sponte* dismissals of Woodhouse's cases were by federal courts applying federal law.

California state law operates in a similar fashion, as the *Huang* case and others illustrate. (E.g., *Lodi v. Lodi* (1985) 173 Cal.App.3d 628, 630–631 [trial court was empowered to dismiss the complaint by section 436 of the Code of Civil Procedure, which provides the court may, upon a motion or at any time in its discretion, and upon terms it deems proper, strike out all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court].)

In a state of some 40 million people, some percentage entertain false and fixed beliefs, which are delusions. (Cf. *People v. Lawley* (2002) 27 Cal.4th 102, 125 ["A delusion is a fixed, false idea"]; *People v. Sirhan* (1972) 7 Cal.3d 710, 726 fn. 5 [a delusion is a belief that is false, illogical, and quite fixed]; *id*. at p. 726 [psychiatrist testified defendant Sirhan Sirhan "gave no evidence of believing himself to be a person chosen by God to kill [Robert] Kennedy whom he regarded as the devil—that such a belief would have been a delusion"].)

Some delusional people know how to file a complaint and to get into court. Trial courts have the tools swiftly to unburden their dockets of complaints that all reasonable people must agree are delusional, as were the claims in this complaint. Plainly this power to dismiss must be used sparingly and only in the most obvious cases, for truth can be stranger than fiction. Courts must remain open to proof that seemingly startling claims are in fact true.

No reasonable person, however, would classify the world that Woodhouse describes as within the realm of possibility. The

24

trial court was right to rule the case had no reasonable possibility of success. We affirm its orders in all respects.

D

Woodhouse has filed three motions for judicial notice, a "motion to strike and requests," and a "motion to stay for Department of Justice review and for patent perjury."

The first motion asks that we take notice of our order informing Respondents of their overdue brief and asks that we "default all of the Conflicted Parties" and award Woodhouse "record punitive damages." It asserts this "case also includes Woodhouse witnessing, two of his female Bar colleagues being decapitated, two Courts clerks being decapitated, Ms. Bosworth, the most famous thespian in the world being decapitated, and Judge Bea, incinerated, all, across from Woodhouse's residence, and by assailants, financed by the Conflicted Parties."

We need not grant the request to take notice of our own order. We deny the remainder of the motion as delusional.

The second motion claims that, "[s]ince this last Appellate Order, while failing to file a Brief, the Conflicted Parties have managed to execute a San Luis Obispo sheriff using a wire around the neck, and murder a elementary school child, using some kind of martial arts knife, all, within the genocide hotel, across the street from Woodhouse." We denied this motion the day after Woodhouse filed it.

The third motion accuses us of "executing close to 30,000 people, in Pismo Beach, CA, after leaving a dead infant on Woodhouse's property, after driving two truckloads of Moldovan and Russian uniformed troops into Woodhouse's house, and after entering an atomic weapon into the genocide hotel, and simulating ignition on Woodhouse's property."

The motion to strike asks that we strike Alphabet's "untimely" request for oral argument, our order granting pro hac vice status to Alphabet's counsel, "default the Conflicted Parties," and "grant a protective order for the 9th Circuit clerk." It further states "Woodhouse has fought off a second Russian, and Moldovan attack, led by the lone Moldovan survivor of the first attack on his property."

Woodhouse filed the motion to stay after receiving our tentative opinion, which he described as a "defective, factually incorrect, and terrorist Judgment." Therein, he claims we "ha[ve] been bribed" and that we committed "patent perjury" with respect to Bosworth.

We deny these motions in their entirety as delusional.

## DISPOSITION

We affirm and award costs to Respondents.


WILEY, Acting P.J.

We concur:


VIRAMONTES, J.


SCHERB, J.

26